UNITED FOOD & COMMERCIAL WORKERS UNION, LOCAL NO. 1496 on Behalf of Sherri D. MORTON, Cynthia H. Edmondson, Helen R. Oehler, and John L. Etten, Appellants,

v.

D & A SUPERMARKETS, INC., Appellee.

No. 7800.

Supreme Court of Alaska.

Sept. 7, 1984.

Allison E. Mendel, Bradley D. Owens, Jermain, Dunnagan & Owens, Anchorage, for appellants.

Peter J. Maassen, Burr, Pease & Kurtz, Anchorage, for appellee.

Before BURKE, C.J., and RABINOW-ITZ, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

RABINOWITZ, Justice.

Employees of D & A Supermarkets, Inc. ("D & A") went on strike on November 11, 1980, after D & A and the employees' union, United Food & Commercial Workers Union, Local 1496 ("Local 1496"), failed to agree on a collective bargaining agreement to replace one which had expired on June 1, 1980. D & A hired replacement employees. The striking workers concurrently made demands for payment of accrued vacation

pay and wages. Local 1496 instituted legal proceedings on behalf of several employees, alleging that D & A's payments of accrued vacation pay and wages owed were untimely, and thus penalties were owed under AS 23.05.140; and that one claimant, Etten, was entitled under the collective bargaining agreement to greater wages than D & A had paid him.

The superior court granted summary judgment in favor of D & A on the Union's claim for penalties pursuant to AS 23.05.-140. After a non-jury trial the superior court entered judgment in D & A's favor on the Etten claim as well. This appeal followed.[1]

## I. AVAILABILITY OF STATUTORY PENALTY

AS 23.05.140 provides in part:

(b) If the employment is terminated, regardless of the cause of the termination, all wages, salaries or other compensation for labor or services become due immediately and shall be paid within three working days after the termination at the place where the employee is usually paid or at a location agreed upon by the employer and employee.

. . . .

(d) If an employer violates (b) of this section by failing to pay within three working days of termination, he is liable to the employee for payment of the employee's regular wage, salary or other compensation from the time of demand to the time of payment, or for the 90 working days, whichever is the lesser amount.

The superior court concluded that the penalty provisions of AS 23.05.140(d) did not apply to the allegedly late payments by D & A of accrued vacation and wages. In the superior court's view, AS 23.05.170, not AS 23.05.140(d), controls in strike situations.[2]

■ We hold that the superior court erred in its legal conclusion that AS 23.05.-170, not AS 23.05.140, determined the rights the employees possessed. In our view, striking employees who are terminated are entitled to the protection of AS 23.05.140(b) and (d). AS 23.05.170 governs the payment of wages owed employees who, though not yet terminated, are not working due to strikes, layoffs, or lockouts. The crucial distinction between these statutes is that AS 23.05.140 covers all employees who, "regardless of the cause," are terminated. It is this phraseology which moves strike-related terminations out from under the provisions of § 170 and into the ambit of § 140.

Thus, the main focus of this appeal is the question of when the subject employees were terminated. Local 1496 asserts that its members were "terminated" within the meaning of § 140 when D & A hired permanent replacements for them. D & A counters with the argument that the employees were not "terminated" until they relinquished their rights under the National Labor Relations Act [NLRA] to preferential rehiring by obtaining substantially equivalent employment elsewhere and informing D & A of that fact.

To support its construction of AS 23.05.-140, D & A analogizes "termination" as used in AS 23.05.140 to those provisions of the NLRA defining an "employee" for purposes of the NLRA.[3] A striking "employ-

1. Neither party has raised the question of whether the statutory provisions at issue in this case, AS 23.05.140 and AS 23.05.170, are preempted by federal labor law. Since that issue is not before this court, we express no opinion upon it.

2. AS 23.05.170 provides:
    *Wages earned before strike, lockout or layoff.* An employee who goes on strike, or is temporarily laid off or subjected to an employer lockout during a pay period shall re-

ceive the portion of compensation earned on or before the next regular payday established as required in this chapter.

3. 29 U.S.C. § 152(3) provides in part:
    (3) The term "employee" shall include any employee, and shall not be limited to the employees of a particular employer, ... and shall include any individual whose work has ceased as a consequence of, or in connection with, any current labor dispute or because of any unfair labor practice, and who has not

ee" retains rights under the NLRA even after a permanent replacement is hired, D & A points out. It is only when the striking employee formally notifies the employer that he has relinquished his rights by obtaining substantially equivalent employment elsewhere that the NLRA ceases to apply. Since, according to D & A's construction, no "termination" occurred when the strikers were replaced, AS 23.05.140 is irrelevant, and therefore no penalty for late payment is owed.

Local 1496 contends that the NLRA definition of an "employee" should not be relied on, because the policies and purposes secured by the NLRA are distinct from those secured by AS 23.05.140.[4] In the Local's view, workers with merely the right to preferential hire are not "employees" of the employer for practical purposes. They have no jobs to return to once D & A hires permanent replacements.

■ We think that Local 1496's position is more persuasive. The NLRA's definition of "employee" is no more relevant to construction of the term "termination" than are the various meanings conveyed by the term "employee" in other federal statutes. See United States v. American Trucking Assoc., 310 U.S. 534, 545, 60 S.Ct. 1059, 1064, 84 L.Ed. 1345, 1352 (1940). No provision in Alaska's labor statutes mandates that the definitions contained in the NLRA be employed as interpretative aids.

> obtained any other regular and substantially equivalent employment. . . .

**4.** Local 1496 argues that the definition of "employee" in § 2(3) of the NLRA (29 U.S.C. § 152(3)) includes striking workers in order to provide them protection against the unfair labor practices proscribed by the Act. In the Local's view, the purposes of AS 23.05.140 are remedial in that "[t]he penalties assessed by the statute for failure to pay terminated employees timely are clearly for the benefit and protection of those employees."

**5.** While the record does not reflect the exact date on which D & A hired replacement employees, the parties agree that it was shortly after the strike began. Since D & A did not pay the strikers their accrued vacation pay until the following March, it is clear that AS 23.05.140(b) was violated.

■ Moreover, we agree with Local 1496 that the different purposes and policies behind the NLRA and AS 23.05 justify defining "termination", as used in AS 23.05.140, to mean the event of hiring permanent replacements for striking employees. Two express purposes of Alaska labor legislation are to "foster and promote the welfare of the wage earners of the state" and to "advance their opportunities for profitable employment." AS 23.05.010. Neither of these purposes would be advanced by the construction urged by D & A. Instead, the welfare of wage earners in this state is best promoted by recognizing their right to be paid all unpaid wages and other compensation within three days of their having been permanently replaced. Accordingly, we hold that the striking employees in the case at bar were terminated for the purposes of § 140 when D & A hired permanent replacements. Thus in the factual context of this case these employees were entitled to the penalties provided for in AS 23.05.140(d).[5]

## II. THE ETTEN CLAIM

One of the striking workers, John Etten, had been the senior night stocker on duty during two periods before the strike. Local 1496 contends that since under the union contract "a senior journeyman must be on each such night work shift [with a crew of three or more]," [6] he should have been

**6.** Clause 18.02 of the Union contract states in part:

> Senior Journeyman: This classification of employee shall not be required in a store where less than a total of one hundred (100) man hours (excluding courtesy clerk hours) are worked in a payroll week by the unit of employees covered by this Agreement. *When a total of one hundred (100) man hours* (excluding courtesy clerk hours) *are worked in a payroll week, then one of such employees shall be classified and compensated by the Employer as a Senior Journeyman.* For each additional three hundred (300) man hours (excluding courtesy clerk hours) worked in such week by the unit of employees covered by this Agreement, one (1) additional employee shall be classified and compensated as a Senior Journeyman. Senior Journeymen shall be full-time employees and *if any night work is performed in the store, with a crew of three or*

paid at the Senior Journeyman pay scale for those periods. It refers to several arbitration decisions allegedly supporting such a result.

The superior court found as a matter of fact that Etten had not been promoted to the Senior Journeyman classification.[7] Local 1496 does not contest that finding; it asserts that as a matter of law under the contract the senior night stocker was entitled to the higher wage scale regardless of whether he had been promoted. We conclude that there is no merit in this contention.

The contract makes the employer solely responsible for classifying employees.[8] There is no requirement that the individual with the most seniority be given the Senior Journeyman classification. Therefore, even if D & A was in breach of the agreement, there is no reason to grant a wage increase to Etten in the face of the superior court's finding that he was not selected for

promotion. The arbitration decisions cited by Local 1496 simply indicate that D & A was in breach of the union contract; they do not establish that Etten is necessarily the individual who was wronged. An arbitrator, with flexible remedial powers, might have decided to award Etten the higher wage for those dates when he was the most senior stocker and no Senior Journeyman was present. However, Etten does not have a contractual right to such relief. We therefore affirm the superior court's resolution of the Etten claim.[9]

AFFIRMED in part, REVERSED in part.

---

more, a senior Journeyman must be on each such night work shift.
[Emphasis added.]

7. After a non-jury trial, the superior court entered the following findings of fact and conclusion of law in regard to Etten's claim for relief.

FINDINGS OF FACT

1. Plaintiff has failed to present sufficient credible evidence to establish his entitlement to a higher wage scale between the dates of June 30, 1980 and August 3, 1980 and between the dates of September 1, 1980 and September 28, 1980 by a preponderance of the evidence.

2. Plaintiff has failed to establish by a preponderance of the evidence that he was employed by defendant as head night stocker or performed the duties of head night stocker for the periods specified above.

CONCLUSIONS OF LAW

1. Defendant is entitled to judgment against plaintiff dismissing plaintiff's claims.

. . . .

8. See note 6, supra.

9. Because we hold there is no basis for relief under the contract, we need not decide whether Etten's failure to request arbitration bars him and Local 1496 from raising this claim, or whether D & A's failure to raise the failure to request arbitration as a defense forfeits the defense. See International Brotherhood of Teamsters, Local 959 v. King, 572 P.2d 1168, 1172–75 (Alaska 1977).