2004 WY 134

**MBB and JPB, a minor child,
Appellants (Petitioners),**

v.

**ERW and MIS, Appellees (Respondents).**

**No. C–04–1.**

Supreme Court of Wyoming.

Nov. 9, 2004.

Representing Appellants: Robert J. Hand, Jr. of Hand & Hand, Casper, Wyoming.

Representing Appellee ERW: Todd Hambrick and Stephanie Hambrick of Krampner, Fuller & Hambrick, Casper, Wyoming.

Representing Appellee MIS: Richard L. Harden, Casper, Wyoming.

Before HILL, C.J., and GOLDEN, LEHMAN, KITE, and VOIGT, JJ.

VOIGT, Justice.

[¶ 1] In 1993, J.S. was born to MIS (Mother) and ERW (Father). Seven months later, Mother and J.S. began living with Michael Bisiar (Bisiar). In 1998, Mother and Bisiar had a child, J.B., together. In 1999, an order was entered awarding Mother custody of J.S. In 2002, Mother moved out of Bisiar's home. She was facing criminal charges and requested that Father take custody of J.S. Father took custody of J.S. and filed a petition to modify the custody order, requesting that he be granted custody of J.S. The district court granted Father's petition. Shortly thereafter, Bisiar and J.B. filed a petition to set aside the modification, claiming that Father had refused to allow them visitation with J.S. Mother and Father filed separate motions to dismiss Bisiar's petition. The district court granted the motions to dismiss, finding that Bisiar and J.B. lacked standing to bring the action. Bisiar and J.B. appealed. We will affirm.

### ISSUE

[¶ 2] The dispositive issue presented in this case is whether a stepparent or sibling has standing to challenge a custody order or to request visitation.

### FACTS

[¶ 3] In 1993, J.S. was born to Mother and Father, an unmarried couple. When J.S. was approximately seven months old, Mother

and J.S. began living with Bisiar. Bisiar, Mother and J.S. lived together for approximately six years, during which time a second child, J.B., was born. Bisiar held J.S. out as his own son and a close familial bond developed among Bisiar, J.B. and J.S.

[¶ 4] In 1999, genetic testing established Father's paternity with respect to J.S. At that time, Mother and Father entered into an agreement giving Mother custody of J.S. and providing a visitation schedule whereby Father and J.S., who had had little prior contact, would be gradually introduced into a standard visitation arrangement. In 2002, Father moved to modify this agreement requesting that he be granted full custody of J.S. Father's motion alleged that on May 29, 2002, Mother asked Father to take custody of J.S. because she was homeless and awaiting arraignment on charges of aiding and abetting burglary and aggravated burglary. Mother and Father stipulated to the modification and an order giving Father primary custody of J.S. was entered by the district court on January 30, 2003.

[¶ 5] On June 3, 2003, Bisiar filed a petition to set aside the modification order. Bisiar asserted that he was not given his "statutory rights to reasonable notice and an opportunity to be heard with regard to the placement of the minor child as provided in W.S. § 20–5–105." The essence of his claim was that under the Uniform Child Custody Jurisdiction Act (UCCJA), he should have received notice of the hearing and that Father was required to provide the names of all persons with whom the minor child has lived during the last five years. Bisiar also asserted that Father, by not allowing him and J.B. visitation with J.S., was infringing upon their constitutional right to freedom of association with J.S. Bisiar requested that the order be modified to "provide a reasonable and liberal visitation schedule by and between [Bisiar and J.B.] and the minor child [J.S.]. . . ." Mother and Father filed separate motions to dismiss Bisiar's petition, asserting that he had no standing to request that the district court's order be set aside or seek visitation because Bisiar was not J.S.'s parent. On October 30, 2003, the district court dismissed Bisiar's petition, finding that

he had "no standing under Wyoming law to bring this action." Bisiar timely appealed.

## STANDARD OF REVIEW

[¶ 6] Bisiar's petition was dismissed pursuant to W.R.C.P. 12(b)(6) for failure to state a claim for which relief can be granted.

"When claims are dismissed under W.R.C.P. 12(b)(6), this court accepts the facts stated in the complaint as true and views them in the light most favorable to the plaintiff. Such a dismissal will be sustained only when it is certain from the face of the complaint that the plaintiff cannot assert any facts that would entitle him to relief. *Story v. State*, 2001 WY 3, ¶ 19, 15 P.3d 1066, ¶ 19 (Wyo.2001). Dismissal is a drastic remedy and is sparingly granted; nevertheless, we will sustain a W.R.C.P. 12(b)(6) dismissal when it is certain from the face of the complaint that the plaintiff cannot assert any set of facts that would entitle that plaintiff to relief. *Robinson v. Pacificorp*, 10 P.3d 1133, 1135–36 (Wyo. 2000)."

*Bonnie M. Quinn Revocable Trust v. SRW, Inc.*, 2004 WY 65, ¶ 8, 91 P.3d 146, 148 (Wyo.2004) (*quoting Manion v. Chase Manhattan Mortgage Corp.*, 2002 WY 49, ¶ 6, 43 P.3d 576, ¶ 6 (Wyo.2002) and *Van Riper v. Oedekoven*, 2001 WY 58, ¶ 24, 26 P.3d 325, ¶ 24 (Wyo.2001)).

## DISCUSSION

[¶ 7] On appeal, Bisiar and J.B. contend (1) that the district court should have been made aware of their relationship with J.S. before granting the modification; and (2) that they should have been awarded visitation. In support of their first argument, they contend that the modification was defective because Father did not comply with a provision of the UCCJA, Wyo. Stat. Ann. § 20–5–110 (LexisNexis 2003), which requires:

Every party in a custody proceeding in his first pleading or in an affidavit attached to that pleading shall give information under oath as to the child's present address, the places where the child has lived within the last five (5) years and the names and pres-

ent addresses of the persons with whom the child has lived during that period.

Bisiar and J.B. maintain that because Father did not include this information in his petition for modification, the resulting order was defective and should have been set aside.

[¶ 8] We disagree. To begin with, Bisiar and J.B. failed to demonstrate the applicability of the UCCJA to an *intrastate* custody matter, considering that the stated purpose of the act is to avoid and resolve custody conflicts between different jurisdictions.[1] Secondly, and more fundamentally problematic for Bisiar and J.B., is the fact that they lack standing to challenge the district court's modification order and request visitation. Standing—a stake or interest in the litigation—must be established for participation in a lawsuit as a party. *State ex rel. Bayou Liquors, Inc. v. City of Casper,* 906 P.2d 1046, 1048 (Wyo.1995) (*quoting Schulthess v. Carollo,* 832 P.2d 552, 556–57 (Wyo. 1992)).

[¶ 9] In *State ex rel. Klopotek v. District Court of Sheridan County,* 621 P.2d 223, 227 (Wyo.1980), *superseded by statute on other grounds by Marquiss v. Marquiss,* 837 P.2d 25 (Wyo.1992), we stated that "[t]he father and mother are natural guardians of the persons of their minor children." Parents enjoy a constitutionally protected fundamental right to "make decisions concerning the care, custody, and control of their children." *Troxel v. Granville,* 530 U.S. 57, 66, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000); *see also Michael v. Hertzler,* 900 P.2d 1144, 1147 (Wyo. 1995). This fundamental right has been recognized as a liberty interest protected under the Fifth and Fourteenth Amendments to the United States Constitution, and is also found in Wyo. Const. art. 1, § 6, which provides, "[n]o person shall be deprived of life, liberty or property without due process of law." *Michael,* 900 P.2d at 1147. In *Troxel,* the United States Supreme Court discussed this principle:

> The liberty interest at issue in this case—the interest of parents in the care, custody, and control of their children—is perhaps the oldest of the fundamental liberty interests recognized by this Court. More than 75 years ago, in *Meyer v. Nebraska,* 262 U.S. 390, 399, 401, 43 S.Ct. 625, 67 L.Ed. 1042 (1923), we held that the "liberty" protected by the Due Process Clause includes the right of parents to "establish a home and bring up children" and "to control the education of their own." Two years later, in *Pierce v. Society of Sisters,* 268 U.S. 510, 534–535, 45 S.Ct. 571, 69 L.Ed. 1070 (1925), we again held that the "liberty of parents and guardians" includes the right "to direct the upbringing and education of children under their control."

*Troxel,* 530 U.S. at 65, 120 S.Ct. 2054. " 'It is cardinal with us that the custody, care and nurture of the child reside first in the parents....' " *Nulle v. Gillette–Campbell County Joint Powers Fire Bd.,* 797 P.2d 1171, 1174 (Wyo.1990) (*quoting Prince v. Massa-*

---

1. Wyo. Stat. Ann. § 20–5–102(a) (LexisNexis 2003) provides:

   (a) The general purposes of this act are:

   (i) To avoid jurisdictional competition and conflict with courts of other states in matters of child custody which have in the past resulted in the shifting of children from state to state with harmful effects on their well-being;

   (ii) To promote cooperation with the courts of other states to the end that a custody decree is rendered in that state which can best decide the case in the interest of the child;

   (iii) To assure that litigation concerning the custody of a child take place ordinarily in the state with which the child and his family have the closest connection and where significant evidence concerning his care, protection, training and personal relationships is most readily available, and that courts of this state decline the exercise of jurisdiction when the child and

   his family have a closer connection with another state;

   (iv) To discourage continuing controversies over child custody in the interest of greater stability of home environment and of secure family relationships for the child;

   (v) To deter abductions and other unilateral removals of children undertaken to obtain custody awards;

   (vi) To avoid relitigation of custody decisions of other states in this state insofar as feasible;

   (vii) To facilitate the enforcement of custody decrees of other states;

   (viii) To promote and expand the exchange of information and other forms of mutual assistance between the courts of this state and those of other states concerned with the same child; and

   (ix) To make uniform the law of those states which enact it.

*chusetts,* 321 U.S. 158, 166, 64 S.Ct. 438, 88 L.Ed. 645 (1944)).

[¶ 10] While a parent's interest in the care and custody of his or her child is a fundamental right, it is not without limitations. *Michael,* 900 P.2d at 1148. The State, pursuant to its police power and in its capacity as *parens patriae,* has the right and duty to "supervise the welfare of children and promote their best interest in a way which affects the rights of parents." *Id.* at 1150. However, state action affecting this fundamental right is subject to strict scrutiny. *Id.* at 1146. Also, private action affecting a parent's interest in the care, custody and control or his child may only be accomplished by court action taken pursuant to appropriate statutory authority. *Id.* at 1147; *State ex rel. Klopotek,* 621 P.2d at 227.

[¶ 11] Besides a child's biological or adoptive parents, the Wyoming legislature has granted statutory authority to request visitation to only two additional classes of persons. First, under Wyo. Stat. Ann. § 20–7–101 (LexisNexis 2003),[2] a child's grandparents, under certain circumstances, may bring an action to establish visitation with their grandchild. And second, under Wyo. Stat. Ann. § 20–7–102 (LexisNexis 2003), a child's primary caregiver has standing to bring an action to establish visitation.[3]

[¶ 12] Because of parents' fundamental right to direct the upbringing of their children, courts generally have held that only those specifically granted standing by statute may petition the court for visitation. *See* *O'Dell v. O'Dell,* 629 So.2d 891, 891–92 (Fla. App.1993); *Sandor v. Sandor,* 444 So.2d 1029, 1030 (Fla.App.1984); *Lihs by Lihs v. Lihs,* 504 N.W.2d 890, 893 (Iowa 1993); *Ken R. on Behalf of C.R. v. Arthur Z.,* 438 Pa.Super. 114, 651 A.2d 1119, 1120–21 (1994), *aff'd,* 546 Pa. 49, 682 A.2d 1267 (1996); and *Weber v. Weber,* 362 Pa.Super. 262, 524 A.2d 498, 499 (1987). One author referred to this principle as the "no statute—no standing—no right to visitation" rule.[4] Joel V. Williams,

2. Wyo. Stat. Ann. § 20–7–101 states:

(a) A grandparent may bring an original action against any person having custody of the grandparent's minor grandchild to establish reasonable visitation rights to the child. If the court finds, after a hearing, that visitation would be in the best interest of the child and that the rights of the child's parents are not substantially impaired, the court shall grant reasonable visitation rights to the grandparent. In any action under this section for which the court appoints a guardian ad litem, the grandparent shall be responsible for all fees and expenses associated with the appointment.

. . .

(c) No action to establish visitation rights may be brought by a grandparent under subsection (a) of this section if the minor grandchild has been adopted and neither adopting parent is a natural parent of the child.

(d) In any action or proceeding in which visitation rights have been granted to a grandparent under this section, the court may for good cause upon petition of the person having custody or who is the guardian of the child, revoke or amend the visitation rights granted to the grandparent.

3. Wyo. Stat. Ann. § 20–7–102 states:

(a) With notice or reasonable efforts to provide notice to the noncustodial parent, a person may bring an original action against any person having custody of the child to establish reasonable visitation rights to the child if the person bringing the original action has been the primary caregiver for the child for a period of not less than six (6) months within the previous eighteen (18) months. If the court finds, after a hearing, that visitation would be in the best interest of the child and that the rights of the child's parents are not substantially impaired, the court shall grant reasonable visitation rights to the primary caregiver. In any action under this section for which the court appoints a guardian ad litem, the person bringing the original action under this section shall be responsible for all fees and expenses associated with the appointment.

(b) No action to establish visitation rights under subsection (a) of this section may be brought by a person related to the child by blood or by a person acting as primary caregiver for the child prior to the adoption of the minor child when neither adopting parent is related by blood to the child.

(c) In any action or proceeding in which visitation rights have been granted to a primary caregiver under this section, the court may for good cause upon petition of the person having custody or who is the guardian of the child, revoke or amend the visitation rights granted to the primary caregiver.

4. At least one court has avoided this rule by invoking the doctrine of "inherent equitable jurisdiction, whereby it hears a sibling's petition even though it has no statutory authority to do so." Joel V. Williams, Comment, *Sibling Rights to Visitation: A Relationship Too Valuable to Be Denied,* 27 U. Tol. L.Rev. 259, 277 (1995). *See, e.g., L. v. G.,* 203 N.J.Super. 385, 497 A.2d 215 (1985). Although the court in *L.,* 497 A.2d at

420

Comment, *Sibling Rights to Visitation: A Relationship Too Valuable to Be Denied,* 27 U. Tol. L.Rev. 259, 287 (1995). Neither Bisiar nor J.B. is J.S.'s biological or adoptive parent, grandparent, or primary caregiver; therefore, neither falls into a class of persons having standing to request visitation.

[¶ 13] In addition to the lack of statutory standing, we note that the common law also prohibits Bisiar and J.B.'s action for visitation. Under the common law, courts "deferred to the right of the parents to make decisions regarding their children's associations...." *Michael,* 900 P.2d at 1146. The common law is adopted in Wyoming by Wyo. Stat. Ann. § 8–1–101 (LexisNexis 2003). We have held that legislation must contain clear and concise language before common law rights may be taken away. *Markle v. Williamson,* 518 P.2d 621, 624 (Wyo.1974), *superseded by statute on other grounds by Cottonwood Steel Corp. v. Hansen,* 655 P.2d 1226 (Wyo.1982) and *Mills v. Reynolds,* 807 P.2d 383 (Wyo.1991); *McKinney v. McKinney,* 59 Wyo. 204, 135 P.2d 940, 942 (1943). In that regard, the legislature has specifically abrogated the common law by granting to only two classes of persons other than parents—grandparents and primary caregivers—standing to bring actions for visitation. *Michael,* 900 P.2d at 1146. The legislature has not extended that right to other relatives, stepparents, boyfriends, or siblings. Such a change to the common law is a policy matter best left to the legislature.[5] *Merrill v. Jansma,* 2004 WY 26, ¶ 26, 86 P.3d 270, 281 (Wyo.2004); *Sare v. Stetz,* 67 Wyo. 55, 214 P.2d 486, 494 (1950).

## CONCLUSION

[¶ 14] A parent's right to associate with and make decisions concerning the care, custody and control of his or her children is a fundamental right protected by the Wyoming and United States Constitutions. The Wyo-

ming legislature has created only two exceptions, other than in juvenile court matters, where non-parents may be granted visitation with children. Those exceptions are for grandparents and primary caregivers. Because Bisiar and J.B. fall into neither of these categories, they did not have standing to bring an action to set aside the district court's custody order or to request that they be awarded visitation.

[¶ 15] Affirmed.

---

222, recognized that the siblings had no statutory standing to seek relief, it heard the case because it believed that siblings possessed the "natural, inherent and inalienable right to visit with each other."

5. A 2001 article reported that "'[f]ive states have statutes explicitly giving siblings standing to peti-

tion the court for visitation.'" William Wesley Patton, *The Status of Siblings' Rights: A View Into the New Millennium,* 51 DePaul L.Rev. 1, 4 (2001) (*quoting* Ellen Marrus, *"Where Have You Been, Fran?" The Right of Siblings to Seek Court Access to Override Parental Denial of Visitation,* 66 Tenn. L.Rev. 977, 1013 (1999)).