2008 WY 81

**Walker Patterson INMAN, Jr., Appellant (Plaintiff),**

v.

**Daisha Loraine WILLIAMS, f/k/a Daisha Loraine Inman, Appellee (Defendant).**

No. S–07–0064.

Supreme Court of Wyoming.

July 15, 2008.

Representing Appellant: John D. Bowers of Bowers Law Firm, P.C., Afton, Wyoming.

Representing Appellee: William L. Combs of Combs Law Office, L.L.C., Evanston, Wyoming.

Before GOLDEN, and HILL, JJ., and KAUTZ, DONNELL, and PERRY, D.JJ.

GOLDEN, Justice.

[¶ 1]   This appeal brings into focus a non-custodial parent's long-standing effort to secure visitation with her two children which the district court, pursuant to the parents' stipulation, ordered nearly eight years ago. Father, the custodial parent, appeals the district court's order filed January 4, 2007, in which the court found Father was not in contempt for failing to follow the court's earlier order filed May 19, 2006, and in which the court reiterated most of the same directives to Father and Mother contained in that earlier order.   In this appeal, Father asserts that the district court's order violates his fundamental rights to associate with and raise his children and is not supported by evidence.   While Mother disagrees with Father's assertions, she also raises the issue whether the district court's order is an appealable order as required by W.R.A.P. 1.05 so that this Court has jurisdiction to entertain this appeal.   We hold that it is not an appealable order and, therefore, we dismiss this appeal with instructions issued in accordance with this Court's supervisory authority.

## ISSUES

[¶ 2]   Father presents this issue:

Was the district court's order restricting [Father's] rights in caring for his children not supported by the evidence and/or a violation of his fundamental rights to associate [with] and raise his children?

Mother responds with these issues:

I.   The order issued on January 4, 2007, is not an appealable order.

II.   The brief of the appellant is so defective as to warrant dismissal or affirmance.

III.   Utilizing the appropriate standards of review, appellant's contentions are without merit.

## FACTS

[¶ 3]   In order to put this appeal in proper perspective, we must relate at some length what has historically transpired with these parents.   Father and Mother married on March 21, 1996, and twins were born to the couple on October 23, 1997.   The children have emotional and learning problems, perhaps related to fetal alcohol syndrome and other causes.   On August 29, 2000, Father and Mother divorced; in the divorce decree the court awarded Father primary custody of the children subject to Mother's visitation as set forth in the recommendations of the children's guardian ad litem. On June 25, 2001, the court filed its stipulated order modifying the divorce decree's visitation provisions in a number of specific respects.   In that order, the court, after setting out the specifics of Mother's visitation privileges, also provided:

12.   Disputes between the parties over the carrying out of any provision of this Order shall be resolved first by application to the Guardian *ad litem* for recommendation, which shall be final except however, neither party is precluded from making application to the District Court for enforcement or modification of any provision of this Order as may be reasonable and necessary, subject to the necessary showing to support such application.

13.   As the children become accustomed to visitation with [Mother], [Mother] may request a recommendation from the Guardian *ad litem* to increase visitation including extended visitation and overnight visitation.   In the event [Mother] disagrees with the Guardian *ad litem's* recommendation, she may make application to the Court for modification of this order,

upon the necessary showing to support modification of this visitation schedule.

14. Both parties shall cooperate with one another and with the Guardian *ad litem,* as may be required by the best interests of the children.

15. Neither party shall denigrate nor disparage the other to or in the presence of the minor children, and both parties shall endeavor to set aside their differences to respect the other's role in their children's life so that the children may enjoy the benefit of both parents.

16. [Mother] shall execute necessary releases to allow the Guardian *ad litem* to consult with her parenting class instructors and counselors to determine her compliance with the applicable provisions of the Decree of Divorce.

17. The Guardian *ad litem,* in her discretion, may modify the visitation schedule provided herein as may be reasonable and necessary to enforce the Orders of this Court or as may otherwise be reasonable and necessary to protect the parties' custodial and visitation rights and the best interests of the children.

18. All terms and provisions of the Decree of Divorce not affected hereby shall remain in full force and effect.

[¶ 4] On November 15, 2004, Mother filed her petition to modify and enforce the divorce decree and the stipulated order of June 25, 2001. The thrust of that petition was that Father's actions had frustrated Mother's visitation privileges and she was seeking relief from the court. On March 7, 2005, Mother filed a motion seeking immediate and regular visitation. In that motion, she averred that a hearing was scheduled for January 19, 2006, on her November 15, 2004, petition. Apparently, no action was taken on that motion. On July 22, 2005, Mother filed renewed motions to obtain regular visitation, to appoint a substitute guardian ad litem for the children, to order a custody evaluation, to join or consolidate pending actions, and to set hearings. Apparently, no action was taken on that pleading. On December 2, 2005, Mother filed yet another pleading covering the same matters presented in her earlier pleading. On December 12, 2005, the court filed its order setting Mother's above-mentioned pleadings for a hearing on January 18, 2006. The court held the hearing on January 18, 2006, and filed its order concerning that hearing on May 19, 2006. From our reading of that order, it is clear that its thrust is the court's effort to prepare the children for visitation with Mother which, although ordered earlier, had not occurred. In that order, the court listed twenty-seven directives to guide the parents, their counsel, and the children's guardian ad litem in the court's plan to prepare the children for reconnection with Mother "as rapidly as safely and appropriately possible." The twenty-seven directives were:

[1] THAT the minor children of the parties shall begin personal therapy with Gale Holtby, MS, LPC as soon as it can be arranged; if possible in light of Ms. Holtby's schedule, such therapy should take place weekly, at the children's school;

[2] THAT the children shall not miss such therapy appointments unless excused by a physician's note or an absence prearranged and excused by Ms. Holtby;

[3] THAT, for the best interests of the children, both parents shall cooperate and work with Ms. Holtby, the children's school, and the Guardian ad Litem; both parents shall follow the recommendations of Ms. Holtby;

[4] THAT both parents shall execute any releases of information in favor of Ms. Holtby that would be necessary or helpful in her therapy with the children;

[5] THAT Ms. Holtby shall have access to any and all information within the control of the parties, including contact with any counselor of the parties, that would be necessary or helpful in her therapy with the children;

[6] THAT the therapy previously arranged for the children by Mr. Inman shall cease immediately;

[7] THAT Ms. Holtby's therapy with the children shall include preparing them for reconnection with their mother as rapidly as safely and appropriately possible;

[8] THAT upon the recommendation of Ms. Holtby, the children's visitation with

their mother shall begin; Ms. Holtby, in consultation with the children's Guardian ad Litem, shall set the terms and conditions for the visitations as well as for such telephone and other contact recommended by Ms. Holtby;

[9] THAT if and when recommended by Ms. Holtby, the visits between the children and their mother will increase in frequency and duration and the supervision will cease;

[10] THAT, with the recommendation and approval of Ms. Holtby, the children shall be allowed to continue (or begin again) their contacts with the school professionals with whom they have worked for years (including Ms. D. Whitney and Ms. D. Hokansen);

[11] THAT when visitation between the children and their mother begins, Mr. Randy Williams shall not be included in nor in the locale of the visits; there will be no contact between Mr. Williams and the children whatsoever;

[12] THAT when visitation between the children and their mother begins, an appropriate supervisor shall be chosen, someone who knows the children and with whom they feel comfortable; Ms. Holtby and the Guardian ad Litem shall select the supervisor;

[13] THAT Dr. Martha Schilling, who has worked with the family in the past, is permitted to update her evaluations done in 1999, but only to the limited extent doable at this time (i.e. any parent/child relationship assessments would not be appropriately done at this time; perhaps updating the past/present personal circumstances of the parents would be appropriately done at this time, but if there is any question, then Dr. Schilling should seek direction from this Court);

[14] THAT both parents shall encourage and support this plan for reconnection between the children and their mother; no one shall speak negatively about the parents in front of the children or allow others to do so; the parents shall not ask the children about the other parent or the activities within the other parent's household; the parents and the extended families will encourage the development/continuation of a loving relationship between the children and the other parent;

[15] THAT the parents shall take any concerns they may have regarding the other parent and the workings of this plan to an appropriate adult, perhaps to Ms. Holtby, to their own legal counsel or to the Guardian ad Litem; no mention of such concerns shall be made to the children;

[16] THAT no alcohol or non-physician prescribed controlled substances shall be used by anyone around the children;

[17] THAT for the present, the parents shall not remove the children from Lincoln County (unless Ms. Holtby, in consultation with the Guardian ad Litem, expressly permits otherwise, given the purpose and duration of the travel); in no event shall such travel interfere with the routine counseling of the children, unless excused as provided above;

[18] THAT prior to either parent's relocation from the Star Valley/Lincoln County area, six months notice must be given in writing to the other parent and that parent's legal counsel;

[19] THAT the parents shall give the children any physician-prescribed medications obtained for the children and follow the doctor's orders;

[20] THAT both parents are entitled to receive from and give information to the children's school, their physicians and other health care providers, their counselors, and the leaders of any extracurricular activities in which the children participate;

[21] THAT Ms. Holtby and the Guardian ad Litem shall report regularly to the Court and counsel for the parties as to the attendance of the children at counseling and at school; the Guardian ad Litem shall devise a brief, simple form for this purpose;

[22] THAT the children shall not undergo any other counseling, other than that provided by Ms. Holtby, above, or any other evaluation of any sort, without further order of this Court, other than routine or emergency assessments done by the children's treating physicians;

[23] THAT, in addition, the Court finds specifically that a custody evaluation, also known as a parenting assessment, is not appropriate at this time, given the prolonged lack of contact between the children and their mother (as corroborated by Dr. Schilling at the hearing herein);

[24] THAT a copy of this Order shall be provided to Ms. Holtby, Dr. Schilling, and the children's school;

[25] THAT the parties financial information, in the form of financial affidavits or other submissions contained within the Court files, shall be sealed; counsel shall review the several case files herein and note for the Clerk of Court which documents should be placed under seal;

[26] THAT payment for the cost of the children's counseling, any evaluations pursuant to this Order, and the fees of the Guardian ad Litem shall be made by Mr. Inman; and

[27] THAT the discovery dispute detailed by Mr. Combs and Mr. Bowers shall be resolved by separate order issued directly from the Court.

[¶ 5] Within two week's of the filing of the court's order, Father, on June 2, 2006, filed a petition for writ of review in this Court seeking appellate review of the district court's order. On June 30, 2006, this Court denied Father's petition. Four months later, on November 2, 2006, Mother filed in the district court her petition for an order to show cause, the thrust of which was that Father had not complied with the district court's May 19, 2006, order. Mother requested that the court order Father to appear and show cause why the court should not hold him in contempt of its order. On November 20, 2006, Father filed a responsive pleading to Mother's show cause petition in which he moved to strike Mother's petition; denied many of the averments of Mother's petition; moved for sanctions; moved for child support, one-half of medical costs, and one-half of the children's reasonable and necessary expenses; and moved to terminate or amend what he called "the temporary order issued by [the court]."

[¶ 6] On November 21, 2006, the court filed its order to show cause, ordering Father to appear before the court and show cause why the court should not hold him in contempt of its May 19, 2006 order. On December 19, 2006, the court held a hearing on its show cause order, and on January 4, 2007, the court filed its order concerning that hearing. In its order, the court stated in the first three numbered paragraphs:

1. [Mother's] motion alleged that [Father] had violated the Court's Order of May 17, 2006. This order provided, among other things, that [the children] were to immediately begin personal therapy with Gale Holtby, MS, LPS. The children were not to miss therapy sessions without a valid excuse. The testimony was uncontroverted. [Father] failed to follow the Order. The Court found that such failure was not willful or intentional and did not find Mr. Inman in contempt.

2. The children had been seeing Susan Heng, a child therapist in Idaho Falls, Idaho since November, 2005. The children kept seeing Ms. Heng despite the Court's order that such counseling cease and that therapy commence immediately with Ms. Holtby. The Court specifically named Ms. Holtby as the therapist for the children because of her known qualifications and expertise. Ms. Holtby also works in the Star Valley area in close proximity to the children. Ms. Holtby was also favored by Ms. Day, the children's Guardian ad Litem.

3. The children have not seen Ms. Heng since September, 2006. Ms. Heng advised the Guardian ad Litem she will help be supportive to the children and a new therapist with this change. It is imperative that Mr. Inman be supportive of and cooperate with the therapist.

From our reading of the first numbered paragraph, it is clear that, although the court found Father failed to follow the order, the court also found such failure was not willful or intentional; consequently, the court ruled that Father was not in contempt.

[¶ 7] Following the first three numbered paragraphs of its order, the court next set out twelve specific directives to guide the

parents, their counsel, and the children's guardian ad litem:

IT IS ORDERED:

1. As soon as it can be arranged, [the children] shall begin personal therapy with Steven Nelson, Ph.D., Clinical Psychologist. Dr. Nelson has had no connection with either parent or the children. No conflict, real or alleged, exists. Such therapy should take place weekly at a location determined by Dr. Nelson. Therapy appointments will be kept unless excused by a physician's note or an absence prearranged. The parents shall cooperate and work with Dr. Nelson and the Guardian Ad Litem and shall follow the recommendations of Dr. Nelson. The parents shall execute any releases of information in favor of Dr. Nelson that would be necessary or helpful in [his] therapy with the children. Dr. Nelson shall have access to any and all information within the control of the parties, including contact with any counselor of the parties that would be necessary or helpful in [his] therapy with the children.

2. The therapy previously arranged for the children by Mr. Inman with Ms. Heng is not to be reinstituted.

3. The purpose of Dr. Nelson's therapy shall include preparing the children for reconnection with their mother as rapidly, safely and appropriately as possible. [Mother] has not had visitation with the children for over 4 years.

4. The children's visitation with their mother shall begin upon the recommendation of Dr. Nelson. Dr. Nelson, in consultation with the children's Guardian Ad Litem, shall set the terms and conditions for the visitation as well as for such telephone and other contact recommended by Dr. Nelson. The visits between the children and their mother will increase in frequency and duration and the supervision will cease if and when recommended by Dr. Nelson. With the recommendation and approval of Dr. Nelson, the children shall be allowed to continue (or begin again) their contacts with the school professionals with whom they have worked for years (including Ms. D. Whitney and Ms. D. Hokansen).

5. Randy Williams shall not be included in nor in the locale when the children are with their mother. There will be no contact between Mr. Williams and the children whatsoever. When visitation between the children and their mother begins, an appropriate supervisor shall be chosen, someone who knows the children and with whom they feel comfortable. Dr. Nelson and the Guardian Ad Litem shall select the supervisor.

6. The parents shall encourage and support this plan for reconnection between the children and their mother. No one shall speak negatively about the parents in front of the children or allow others to do so. The parents shall not ask the children about the other parent or the activities within the other parent's household. The parents and the extended families will encourage the development/continuation of a loving relationship between the children and the other parent. The parents shall take any concerns they may have regarding the other parent and the workings of this plan to an appropriate adult, perhaps to Dr. Nelson, to their own legal counsel or to the Guardian ad Litem. No mention of such concerns shall be made to the children.

7. No alcohol or non-physician prescribed controlled substances shall be used by anyone around the children nor shall either parent allow the children to be in the presen[ce] of any convicted felon.

8. The parents shall not remove the children from the State of Wyoming (unless Dr. Nelson, in consultation with the Guardian ad Litem, expressly permits otherwise, given the purpose and duration of the travel); in no event shall such travel interfere with the routine counseling of the children.

9. Prior to either parent's relocation from the Star Valley/Lincoln County area, 60 days notice must be given in writing to the other parent and that parent's legal counsel.

10. The parents shall give the children any physician-prescribed medications obtained for the children and follow the doctor's orders. Both parents are entitled to receive from and give information to their

physicians and other health care providers, their counselors, and the leaders of any extracurricular activities in which the children participate. Dr. Nelson and the Guardian ad Litem shall report regularly to the Court and counsel for the parties as to the attendance of the children at counseling and at school. The Guardian ad Litem shall devise a brief, simple form for this purpose. The children shall not undergo any other counseling, other than that provided by Dr. Nelson, or any other evaluation of any sort, without further order of this Court, other than routine or emergency assessments done by the children's treating physicians.

11. A copy of this Order shall be provided to Dr. Nelson and Ms. Heng.

12. Payment for the cost of the children's counseling, any evaluations pursuant to this Order, and the fees of the Guardian ad Litem shall be made by Mr. Inman.

[¶ 8] Our comparison of these twelve directives with the twenty-seven directives contained in the court's May 19, 2006, order shows that they are, for the most part, the same:

| May 19, 2006, directives | January 4, 2007, directives |
| --- | --- |
| 1-5 | 1 |
| 6 | 2 |
| 7 | 3 |
| 8-10 | 4 |
| 11-12 | 5 |
| 14-15 | 6 |
| 16 | 7 |
| 17 | 8 |
| 18 | 9 |
| 19-22 | 10 |
| 24 | 12 |

Our comparison of these two sets of directives shows that the new directives change the old directives in only three particulars: (1) Dr. Steven Nelson replaces Dr. Gale Holtby as the children's personal therapist and assumes that role as provided in the directives; (2) the parents shall not remove the children from the State of Wyoming, rather than Lincoln County; and (3) either parent must give sixty days, rather than six months, written notice if relocating from the Star Valley/Lincoln County area. From our reading of the order, it is clear that the order embodies, as did the court's May 19, 2006, order, the court's plan to prepare the children for reconnection with Mother "as rapidly, safely and appropriately as possible" be-

cause Mother "has not had visitation with the children for over 4 years."

[¶ 9] On February 2, 2007, Father timely filed his notice of appeal of the district court's January 4, 2007, order.

## DISCUSSION

[¶ 10] This Court will review the issue presented by Father's appeal if the January 4, 2007, order is an appealable order. W.R.A.P. 1.04(a); *SEG v. GDK,* 2007 WY 203, ¶ 4, 173 P.3d 395, 395 (Wyo.2007). Whether this Court has jurisdiction is a question of law to be reviewed *de novo. SEG,* ¶ 4, 173 P.3d at 395. Father contends that the order is an appealable order as defined in W.R.A.P. 1.05(b), namely, "[a]n order affecting a substantial right made in a special proceedings." W.R.A.P. 1.05(b). The rule contains two requirements: a special proceeding and a substantial right being affected. Neither Father nor Mother addresses the special proceeding requirement. In *FML v. TW,* 2007 WY 73, ¶ 6, 157 P.3d 455, 459 (Wyo.2007), this Court held that a hearing on one parent's motion to modify custody and show cause in which the other parent appeared and defended was a special proceeding under W.R.A.P. 1.05(b). Quoting from *In re WJH,* 2001 WY 54, ¶ 10, 24 P.3d 1147, 1151–52 (Wyo.2001), this Court noted:

In general terms, special proceedings are those which were not actions in law or suits in equity under common law and which may be commenced by motion or petition upon notice for the purpose of obtaining relief of a special or distinct type. *State in Interest of C.,* 638 P.2d 165, 168 (Wyo.1981). They result from a right conferred by law together with authorization of a special application to the courts to enforce the right. *Id.* This court has recognized that, even in cases involving delinquency, proceedings under the Juvenile Court Act could be in lieu of proceedings under the general criminal procedure.

This Court is satisfied that the hearing from which the order in question emerged was a special proceeding as contemplated by W.R.A.P. 1.05(b).

[¶ 11] Father and Mother disagree whether the second requirement of W.R.A.P. 1.05(b), a substantial right being affected by the order, exists in this case. Father argues that this Court has always recognized that parents enjoy a constitutionally protected fundamental right to raise their children and make decisions concerning their care, custody, and control. *MBB v. ERW,* 2004 WY 134, ¶ 9, 100 P.3d 415, 418 (Wyo.2004). In *MBB,* this Court stated:

> In *State ex rel. Klopotek v. District Court of Sheridan County,* 621 P.2d 223, 227 (Wyo.1980), *superseded by statute on other grounds by Marquiss v. Marquiss,* 837 P.2d 25 (Wyo.1992), we stated that "[t]he father and mother are natural guardians of the persons of their minor children." Parents enjoy a constitutionally protected fundamental right to "make decisions concerning the care, custody, and control of their children." *Troxel v. Granville,* 530 U.S. 57, 66, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000); *see also Michael v. Hertzler,* 900 P.2d 1144, 1147 (Wyo.1995). This fundamental right has been recognized as a liberty interest protected under the Fifth and Fourteenth Amendments to the United States Constitution, and is also found in Wyo. Const. art. 1, § 6, which provides, "[n]o person shall be deprived of life, liberty or property without due process of law." *Michael,* 900 P.2d at 1147. In *Troxel,* the United States Supreme Court discussed this principle:

> > The liberty interest at issue in this case-the interest of parents in the care, custody, and control of their children-is perhaps the oldest of the fundamental liberty interests recognized by this Court. More than 75 years ago, in *Meyer v. Nebraska,* 262 U.S. 390, 399, 401, 43 S.Ct. 625, 67 L.Ed. 1042 (1923), we held that the "liberty" protected by the Due Process Clause includes the right of parents to "establish a home and bring up children" and "to control the education of their own." Two years later, in *Pierce v. Society of Sisters,* 268 U.S. 510, 534–535, 45 S.Ct. 571, 69 L.Ed. 1070 (1925), we again held that the "liberty of parents and guardians" includes the right "to direct the upbringing and education of children under their control."

> > *Troxel,* 530 U.S. at 65, 120 S.Ct. 2054, 147 L.Ed.2d 49. " 'It is cardinal with us that the custody, care and nurture of the child reside first in the parents....' " *Nulle v. Gillette–Campbell County Joint Powers Fire Bd.,* 797 P.2d 1171, 1174 (Wyo.1990) (*quoting Prince v. Massachusetts,* 321 U.S. 158, 166, 64 S.Ct. 438, 88 L.Ed. 645 (1944)).

> *MBB,* ¶ 9, 100 P.3d at 418–19.

[¶ 12] Father claims that his right to raise his children and make those decisions is affected by the order's directives that he end the children's counseling sessions with their counselor, Sue Heng; Dr. Steven Nelson will be the children's counselor for the purpose of the court's plan to reconnect the children with Mother; Dr. Steven Nelson in consultation with the children's guardian ad litem shall decide when visitation with the children and Mother will begin and the nature and extent of that visitation; Father shall not remove the children from the State of Wyoming unless Dr. Steven Nelson in consultation with the children's guardian ad litem expressly agrees; Father shall not provide any other counseling for or evaluation of the children without the court's permission; and Father shall give the children any physician-prescribed medications for the children and follow physicians' orders. Father also claims that the right to travel enjoyed by his children and him is affected by the order's directives proscribing their removal from the State without permission and their relocation from the Star Valley/Lincoln County area unless he gives sixty days written notice. *Watt v. Watt,* 971 P.2d 608, 614–17 (Wyo. 1999).

[¶ 13] Responding to Father's claims, Mother asserts (1) the order originates from a contempt proceeding in which the court did not hold Father in contempt and, therefore, is interlocutory in nature, not final, and not appealable, citing *Madden v. Madden,* 558 P.2d 669, 670 (Wyo.1977); (2) the order does not affect Father's substantial rights; (3) the order does not determine the merits of the controversy between Father and Mother; and (4) the order does not resolve all the

outstanding issues. We will consider these assertions in order.

[¶ 14] Mother asserts that the court's order is not appealable because it originates from a contempt proceeding. In *Madden,* 558 P.2d at 669, decided under W.R.C.P. 72(a)(2), the forerunner of W.R.A.P. 1.05(b), the district court's divorce decree awarded the mother custody of the children and the father visitation rights with the obligation of child support. Later, the mother filed a petition for a show cause order, alleging the father had not paid child support and health insurance premiums; the district court issued its show cause order; the father filed his responsive pleading, denying the mother's allegations and alleging that one child was now married and the other had reached majority. *Id.* at 670. After the hearing on these matters, the district court's order simply found that the child was neither self-supporting nor emancipated, but did not adjudge the father in contempt. *Id.* The father filed an appeal of the order in which he presented the issue whether, in light of a legislative change lowering the age of majority, he was obligated for child support under the language of the divorce decree. *Id.* This Court held it lacked jurisdiction to hear the appeal on its merits because the district court's order was only interlocutory. *Id.* at 671. While recognizing that an order imposing punishment for contempt of court is a final order which is appealable under the procedural rule, this Court observed that the district court's order before it did not find the father to be in contempt of court. *Id.* at 670. This Court also noted that a majority of courts have held that "when contempt proceedings are brought any order short of the order which imposes punishment by fine or imprisonment is interlocutory in nature, and is not a final order from which an appeal can be taken." *Id.* at 670–71 (citing cases).

[¶ 15] Mother asserts that the order does not affect Father's substantial rights. She observes that the order neither changes nor modifies in any manner the custodial arrangement for the children. Father retains primary custody as granted in the original divorce decree and is free, unlike her, to associate with the children at his leisure.

[¶ 16] Mother contends that the order does not determine the merits of the controversy or resolve all pending issues between Father and Mother. She points out that her petition to modify requested, alternatively, a change in custody or enforcement of the divorce decree with respect to, among other matters, her visitation rights. She correctly observes that the court has yet to set the proceeding for final hearing to determine those issues. She stresses that the order at issue simply reflects the court's attempt to obtain sufficient input from a qualified therapist to inform the court's later decision in these matters.

[¶ 17] After careful consideration of the parties' respective contentions, we find that Mother's arguments are more persuasive. We hold the order in question is not an appealable order under W.R.A.P. 1.05(b). The true thrust of the court's order is to provide therapeutic counseling to the parties' children so that eventually Mother's long-delayed visitation with her children can be determined and established. Until the children's therapeutic counseling has reached the point at which Mother's visitation can be determined and established, the terms of that visitation have not been fixed. Because the order does not hold Father in contempt and does not fix the terms of Mother's visitation, the order does not determine the action.

[¶ 18] Although the order contains language that the children's therapeutic counselor, in consultation with the guardian ad litem, shall determine the terms of Mother's visitation when the children have been prepared for that visitation, in the exercise of this Court's supervisory authority, we direct the therapeutic counselor and the guardian ad litem to recommend such terms to the district court and that court shall establish, with all deliberate speed, the appropriate terms of visitation as provided by statute.

[¶ 19] Appeal dismissed.