## CUSTODY OF LORI.[1]

Suffolk. March 10, 2005. - May 24, 2005.

Present: MARSHALL, C.J., IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Constitutional Law,* Parent and child, Right to hearing. *Due Process of Law,* Hearing, Right to hearing. *Parent and Child,* Custody of minor, Interference with parental rights. *Minor,* Custody. *Probate Court,* Custody of child. *Supreme Judicial Court,* Appeal from order of single justice.

This court concluded that when a Probate and Family Court judge removed a child from her mother's custody before hearing evidence on the issue of custody or allowing the mother to defend herself against a charge of unfitness, G. L. c. 119, § 23 (C), required the probate judge to conduct an evidentiary hearing within seventy-two hours of issuing the order transferring custody to the Department of Social Services [319-322], and therefore, a single justice of the county court abused his discretion in denying the mother's petition for relief from the probate judge's order [322-323].

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on December 19, 2003.

The case was heard by *Greaney,* J.

*Judith Farris Bowman (Jinanne S.J. Elder* with her) for the mother.

*Virginia A. Peel,* Special Assistant Attorney General *(Lynne M. Murphy* with her) for Department of Social Services.

*MaryEllen Donovan,* for the child, was present but did not argue.

*Andrew. L. Cohen,* Committee for Public Counsel Services, & *Barbara H. Mitchell,* for Committee for Public Counsel Services & another, amici curiae, submitted a brief.

IRELAND, J. A mother sought relief pursuant to G. L. c. 211, § 3, in the county court from the order of a Probate and Family Court judge, issued sua sponte without an evidentiary hearing, removing her child from her custody and placing the child in the

---

[1]A pseudonym.

custody of the Department of Social Services (department), pursuant to G. L. c. 119, § 23 (C), pending a forensic evaluation. A single justice denied the mother's petition for relief and she appealed to the full court. Although the child was returned to her mother's custody at the completion of the forensic evaluation some five months after the removal, making this case moot, the judge noted that she could remove the child again, sua sponte, "if there's a need." Accordingly, "we focus on the salient legal issues if only because they are important and capable of repetition." *Care & Protection of Erin*, 443 Mass. 567, 568 (2005), and cases cited.

Because a parent has a fundamental liberty interest in maintaining custody of her child, we conclude that when removing a child from her parent's custody before hearing evidence on the issue of custody or allowing the parent to defend herself against a charge of unfitness, G. L. c. 119, § 23 (C), requires the same protection of a seventy-two hour evidentiary hearing as is afforded under G. L. c. 119, § 24, and that the single justice abused his discretion in denying the mother's petition.

*Background.* The mother and father, who are unmarried, are the parents of a daughter born in 1999. The mother had physical custody of the child and the father had supervised visitation rights. Based on her own concerns about the child's behavior after visits with the father, the mother enrolled the child in psychotherapy.

In July, 2003, the mother informed the child's pediatrician and psychotherapist about alleged physical marks on the child and the child's sexualized behavior. The mother then took the child to Children's Hospital in Boston for an evaluation. Pursuant to G. L. c. 119, § 51A, the hospital filed a report with the department, alleging that the father had sexually abused the child. The department investigated the allegations and concluded that they were unsupported by any physical evidence or reports of abuse by the child. However, the investigator for the department was troubled by the behavior of the mother and the child, and believing the mother was impeding the child's development, the investigator found that there was reasonable cause to believe that the mother was neglecting the child. Accordingly, the department initiated a forty-five day assessment of the

family. After a hearing on a motion by the father, filed in August, 2003, to reinstate visitation or to transfer custody to him, a Probate and Family Court judge reinstated supervised visitation and appointed a guardian ad litem to investigate the family situation.

In September, 2003, the mother filed a complaint for contempt and a motion to again suspend the father's visitation, alleging that he had visited the child unsupervised. On September 12, 2003, the probate judge held a nonevidentiary hearing on the complaint. The mother's counsel represented that the child's pediatrician and psychotherapist believed it was in the child's best interest to remain with the mother. Neither the department nor the guardian ad litem had yet completed their assessments of the family. In a letter to the court, the department social worker indicated that the child did not then appear to be at imminent risk for abuse or neglect while living with the mother. However, the social worker had not yet reached any conclusions about the family. Although the guardian ad litem had not completed her report, she remarked that there were a number of risk factors that warranted a detailed forensic evaluation. The social worker for the department agreed with the need for a forensic evaluation. The guardian ad litem indicated that a forensic evaluation would normally take six to eight weeks. At the conclusion of the hearing, the judge ordered, sua sponte, that the child be placed in the custody of the department. The mother objected and the judge scheduled another hearing for October 15, 2003.

On October 15, 2003, the mother filed an objection to the placement of the child with the department and moved for a prompt evidentiary hearing. The judge ordered that the child remain in the department's custody until the forensic evaluation was completed. Although she allowed the mother's motion for an evidentiary hearing, she ordered that it be scheduled after the completion of the forensic evaluation, which was expected to take three months.

On January 7, 2004, the single justice denied the mother relief without a hearing. On January 20, 2004, the mother filed

a notice of appeal with the full court from the decision of the single justice.[2]

The forensic evaluation, completed in February, 2004, recommended that the child be reunited with the mother. In March, 2004, the probate judge granted the mother physical custody of the child, and in May, 2004, terminated the order transferring custody of the child to the department and dismissed the action "without prejudice."

*Discussion.* The mother argues that the five-month continuation of the temporary custody order, pending the completion of the forensic evaluation, deprived her of her due process rights. Specifically, she argues that a seventy-two hour, postdeprivation hearing, comparable to that provided for in the Juvenile Court under G. L. c. 119, § 24, should be followed for similar orders entered in the Probate and Family Court pursuant to G. L. c. 119, § 23 (C).[3]

Both §§ 23 (C) and 24 of G. L. c. 119 authorize the emergency transfer of custody of a child to the department. However, whereas § 24 requires an evidentiary hearing be held within seventy-two hours of an emergency removal to determine whether custody of the child should remain with the department, § 23 (C) makes no mention of such a hearing.[4] We have long recognized that when two or more statutes relate to the

---

[2]We acknowledge the amicus brief submitted by the Committee for Public Counsel Services and the Greater Boston Legal Services.

[3]The child and the amici echo the mother's claim that G. L. c. 119, § 23 (C), should have the same procedural safeguards as those provided by G. L. c. 119, § 24.

[4]Section 23 (C) of G. L. c. 119 provides that the department "may seek and shall accept on order of a probate court the responsibility for any child under 18 years of age who is without proper guardianship due to death, unavailability, incapacity or unfitness of the parent . . . . In making an order, the probate court shall consider the provisions of [G. L. c. 119, § 29C,] and shall make the written certification and determinations required by said section 29C.

General Laws c. 119, § 24, provides in pertinent part:

> "The divisions of the juvenile court department, upon the petition under oath of a person alleging on behalf of a child under the age of 18 within the jurisdiction of the court that the child: (*a*) is without necessary and proper physical or educational care and discipline; (*b*) is growing up under conditions or circumstances damaging to the child's sound character development; (*c*) lacks proper attention of the parent, guard-

same subject matter, they should be construed as a harmonious whole, consistent with the legislative purpose. See, e.g., *First Justice of the Bristol Div. of the Juvenile Court Dep't* v. *Clerk-Magistrate of the Bristol Div. of the Juvenile Court Dep't*, 438 Mass. 387, 402-403 (2003), and cases cited; *Duro* v. *Duro*, 392 Mass. 574, 579 (1984). Sections 23 (C) and 24 not only relate to the same subject, but are parts of the same comprehensive child welfare chapter, declaring the Commonwealth's policy "for the protection and care of children." G. L. c. 119, § 1. Moreover, the test for custody is the same under both §§ 23 (C) and 24 — the fitness of the biological parents to further the welfare and best interests of the child. *Petition of the Dep't of Pub. Welfare to Dispense with Consent to Adoption*, 383 Mass. 573, 589 (1981).

"Parents have a fundamental liberty interest in maintaining custody of their children, which is protected by the due process clause of the Fourteenth Amendment to the United States Constitution." *Care & Protection of Erin*, 443 Mass. 567, 570 (2005), citing *Care & Protection of Robert*, 408 Mass. 52, 58, 60 (1990). Accordingly, due process rights must be honored whenever a parent is deprived of the right to raise her child.

---

ian with care and custody or custodian; or (*d*) has a parent, guardian or custodian who is unwilling, incompetent or unavailable to provide any such care, discipline or attention, may issue a precept to bring the child before the court, shall issue a notice to the department and summonses to both parents of the child to show cause why the child should not be committed to the custody of the department or that any other appropriate order should not be made. . . . If, after a recitation under oath by the petitioner of the facts of the condition of the child who is the subject of the petition, the court is satisfied that there is reasonable cause to believe that the child is suffering from serious abuse or neglect or is in immediate danger of serious abuse or neglect and that immediate removal of the child is necessary to protect the child from serious abuse or neglect, the court may issue an emergency order transferring custody of the child to the department . . . . *A transfer of custody shall be for a period not exceeding 72 hours except that upon the entry of the order, notice shall be given to either or both parents, guardian with care and custody or other custodian to appear before the court. The court shall, at that time, determine whether temporary custody shall continue until a hearing on the merits of the petition for care and protection is concluded before the court.* The court shall also consider the provisions of [G. L. c. 119, § 29C,] and shall make the written certification and determinations required by said section 29C." (Emphasis added.)

See *Care & Protection of Robert, supra* at 58, 68, and cases cited (discussing balancing of interests between individual and government and holding that decision to maintain removal from parental custody reached at seventy-two hour hearing must meet intermediate standard of "fair preponderance of the evidence").

As we have previously noted, "the purpose of a seventy-two hour hearing is to enable the judge to determine whether a child will be in immediate danger of serious abuse or neglect if returned to his parents or custodian." *Care & Protection of Perry*, 438 Mass. 1014, 1014 (2003), citing G. L. c. 119, § 24. The threshold determination at an initial removal hearing is merely reasonable cause to believe the child is suffering from abuse or neglect; at that initial hearing, it is anticipated that further proceedings regarding the child's situation will be held promptly. Therefore, a primary function of the seventy-two hour hearing is to discover and correct any errors that may have occurred during the initial hearing, which, in the interest of expediency, most likely cannot be exhaustive. *Care & Protection of Robert, supra* at 64-65.

Contrary to the department's argument, the current guidelines in place in the Probate and Family Court do not meet due process requirements.[5] Parents and children face the same substantive due process deprivations regardless of the court ordering the removal. Because the interests affected by rulings under the two sections are the same, the same protections should be provided. Furthermore, "[i]t is not to be lightly assumed that the Legislature would have intended to treat [parents and children facing removal of custody] differently depending upon which court [ordered the emergency removal of the child from the parents' custody]" (citation omitted). *Adoption of Donald,*

[5]The Guideline Procedures for the Placement of Children in the Custody of the Department of Social Services at the Initiative of the Court (Nov. 2001) provide for a "status conference" to be held after a removal ordered sua sponte. Guideline 7.b provides that during the status conference, the court shall inquire as to the results of the department's initial assessment, determine what additional assessments may be needed, and inquire as to the appropriateness of the child's placement. The guidelines state that a status conference should be held within a relatively short period of time. However, the guidelines distinguish between those situations where the parents were not present at the initial hearing (two weeks), governed by guideline 7.a, and those where they were present (forty-five days), governed by guideline 8.a.

44 Mass. App. Ct. 857, 860 (1998), *S.C.*, 49 Mass. App. Ct. 908 (2000). Rather, emergency removal of children should be treated the same regardless of which court is issuing the order. Accordingly, we hold that G. L. c. 119, § 23 (C), requires the same due process protections in the Probate and Family Court that parents and children receive under G. L. c. 119, § 24, in the Juvenile Court. Thus, in cases where the Probate and Family Court has not previously taken evidence on the issue of child custody and allowed a parent to defend herself against a charge of unfitness, a prompt, postdeprivation evidentiary hearing should be held after a judge issues an order transferring custody to the department.[6]

In this case, the judge did not hold a hearing on the issue of the child's custody or the mother's unfitness before removing the child. Instead, the judge removed the child at a nonevidentiary hearing on the mother's complaint that the father had violated a visitation agreement. The mother was not permitted to defend herself against the charge of unfitness at the time of removal. Despite this, the judge scheduled only a nonevidentiary status conference to be held one month later, and at that status conference postponed scheduling an evidentiary hearing until the forensic evaluation was completed, which did not occur until five months after the initial removal. This violated the mother's due process rights. As the judge did not hear evidence on the child's custody or the mother's unfitness before removing the child, a prompt, postdeprivation evidentiary hearing should have been held within seventy-two hours of the child's removal.

*Conclusion.* For the reasons stated above, we conclude that the single justice abused his discretion in denying the mother's

---

[6]The department correctly points out that an order issued sua sponte under G. L. c. 119, § 23 (C), occurs during pending proceedings, where information made known to the judge over the course of those proceedings has caused the judge to believe that a custodial parent is not fit or that a child is at risk. As indicated above, if the issue of a parent's fitness or risk of harm to the child has already been the subject of an evidentiary hearing, at which the parent has had the opportunity to address these issues, nothing in today's opinion requires that the parent be given yet another evidentiary hearing within seventy-two hours of the order removing the child. Similarly, when a seventy-two hour hearing is held, the judge has broad discretion to exclude evidence that is cumulative or repetitive of evidence that the court has already heard at prior stages of the proceeding.

petition, because when a judge removes a child from her parents' custody for emergency reasons without a prior hearing on custody, G. L. c. 119, § 23 (C), requires the same protection of a seventy-two hour evidentiary hearing as is provided in G. L. c. 119, § 24. Judgment shall be entered in the county court dismissing the action as moot.

*So ordered.*