2006 WY 87

**In the Matter of the GUARDIANSHIP OF MEO, a minor child.**

**KO, Appellant (Respondent),**

v.

**LDH and BJH, Appellees (Petitioners),**

and

**The State of Wyoming, Appellee (Intervenor).**

No. C–05–11.

Supreme Court of Wyoming.

July 20, 2006.

John Burman, Faculty Director, and Robert J. Percifield, Student Intern, U.W. Legal Services Program, Laramie, Wyoming, for Appellant.

Megan E. Overmann Goetz, of Pence & MacMillan, LLC, Laramie, Wyoming, for Appellees.

Warren A. Lauer and April Jamison, of Lauer Law Office, Laramie, Wyoming, Guardians Ad Litem.

Patrick J. Crank, Attorney General; Robin Sessions Cooley, Deputy Attorney General; Dan S. Wilde, Senior Assistant Attorney General; Ellen Rutledge, Assistant Attorney General, for State of Wyoming.

Before VOIGT, C.J., and GOLDEN, HILL *, KITE, and BURKE, JJ.

BURKE, Justice.

[¶ 1] Appellant, KO, ("Mother"), challenges the appointment of Appellees, LDH and BJH, ("Grandparents"), as temporary and permanent guardians of her daughter, MEO. Mother contends the district court erred in establishing the temporary guard-

* Chief Justice at time of oral argument.

ianship without a hearing and without proper notice to her. Mother also contends the district court erred in establishing the permanent guardianship without finding her to be an unfit parent. In the absence of a finding of parental unfitness, Mother claims that the appointment of guardians for MEO was not authorized and violated Mother's fundamental rights as a parent. For the reasons explained in this opinion, we agree with Mother that the district court erred in establishing the guardianship. Accordingly, we reverse the order appointing Grandparents as MEO's guardians.

## ISSUES

[¶ 2] Mother presents the following issues:

I. Whether the district court entered its Order Appointing Temporary Guardians and Conservators in violation of Wyoming law.

II. Whether the guardianship statute as interpreted by the district court violates substantive and procedural due process.

III. Whether parental unfitness must be proved at a court hearing before a guardianship is granted to a non-parent.

Grandparents state the issues as:

I. Whether the Court should consider interlocutory and non-appealable matters which are now moot.

II. Whether the district court properly entered an order appointing guardians and conservators consistent with MEO's best interests and Appellant's constitutional rights.

III. Whether Wyoming Statute Annotated § 3–2–104 is constitutional.

The State, as Intervenor, identifies a single issue:

Whether the Wyoming guardianship statutes, Wyo. Stat. Ann. §§ 3–1–101 through

---

3–2–202, violate parents' procedural or substantive due process rights?

## FACTS

[¶ 3] MEO is a minor, born November 15, 1988. KO ("Mother") is the only living parent of MEO.[1] In 1999, MEO moved with her mother to Laramie, Wyoming from Texas. After the move, MEO maintained a close relationship with extended family in Texas and typically spent time each summer visiting with Grandparents.[2]

[¶ 4] During the summer of 2004, Mother and MEO traveled to Rhode Island on vacation. From there, MEO traveled to Texas to visit Grandparents. Her stay extended for the remainder of the summer. Mother remained in Rhode Island and did not intend to return to Laramie until after the school year began. Plans were made for MEO to return to Laramie to begin school and stay with an adult friend of Mother until Mother returned from Rhode Island.

[¶ 5] In early September 2004, Grandparents became concerned that MEO was in Laramie without Mother. They contacted the Laramie police and reported MEO as an abandoned child. The police contacted MEO and took her to the station. Following an investigation, the police released her to the care of Mother's adult friend.

[¶ 6] On Friday, September 10, 2004, Grandparents filed a petition to be appointed permanent guardians and conservators of MEO.[3] That same day, they also filed a motion requesting to be appointed temporary guardians. No hearing was requested on the motion for temporary appointment, and no hearing was scheduled. The only pleading making any reference to a hearing was entitled "Notice of Deadline for Filing Objections," and provided:

NOTICE IS HEREBY GIVEN that [LDH] and [BJH] have filed in the Second Judicial District Court in and for Albany

---

1. MEO's father died when she was five.

2. Grandparents are MEO's maternal grandparents.

3. The parties' arguments focus upon the guardianship and do not provide analysis pertaining to

the conservatorship. Accordingly, our opinion is limited to guardianship issues. For the sake of brevity, we have omitted most references to "conservatorship" and "conservators" from our general discussion of the guardianship issues.

County, State of Wyoming, a Petition praying that they be appointed temporary and permanent Guardians and Conservators of [MEO and] that Letters of Guardianship and Conservatorship be issued to them. On or after the ... 29th day of November, 2004, at 9:00 o'clock a.m., the Court will enter an order after a hearing is heard on said Petition, in the Second Judicial District Courthouse, Laramie, Albany County, Wyoming.

A summons was not requested or issued. Counsel for Grandparents filed a certificate of service indicating the petition and notice were mailed to MEO and Mother on September 10, 2004, with a return receipt requested.

[¶ 7] During the weekend, Mother returned to Laramie and was told by a friend and MEO that Grandparents were seeking to be appointed as MEO's guardians. The next business day, Monday, September 13, 2004, Mother went to the post office and signed for her mail.[4] Mother contacted the court and counsel for Grandparents in an effort to learn if a hearing was scheduled but was informed that the only hearing scheduled was set for November 29, 2004. Unbeknownst to Mother, the district court entered an order on September 13, 2004, appointing Grandparents as temporary guardians of MEO. Mother learned that the temporary guardianship had been established on September 15, 2004, when Grandparents appeared at her home to take custody of MEO.

[¶ 8] On September 24, 2004, counsel entered an appearance on behalf of Mother and requested an immediate hearing. Mother also filed a motion requesting the appointment of a guardian ad litem (GAL) for MEO. The district court entered its order appointing the GAL on September 30, 2004.

[¶ 9] On October 4, 2004, Mother filed a motion requesting an immediate hearing on the merits, or alternatively, termination of the temporary guardianship. The GAL objected to an immediate hearing, requesting additional time to complete an investigation. Grandparents filed a traverse to Mother's motion, referring to the notice filed at the

time of the petition providing that a hearing on the merits would be conducted on November 29, 2004. On October 8, 2004, the district court denied Mother's motion and ordered that the temporary guardianship established on September 13, 2004, "shall remain in full force and effect pending final disposition of this matter to occur on or before November 29, 2004."

[¶ 10] On October 26, 2004, Mother filed several pleadings objecting to the guardianship and the procedural background to date. She filed an affidavit discussing the notice she had received, or failed to receive, and asserting the petition included false allegations against her. Additionally, she requested that the temporary guardianship be dissolved because the guardianship had been established *ex parte,* without a hearing, in violation of pertinent statutes and contrary to her fundamental parental rights and protections afforded to her by due process. Because of Grandparents' expressed intent to take MEO to their home in Texas prior to the scheduled hearing on November 29, 2004, Mother requested an immediate hearing on her motion or an order requiring the Grandparents to remain in Wyoming with MEO. In response, Grandparents advised the district court that they would remain in Wyoming.

[¶ 11] On November 4, 2004, the district court held a brief hearing and received limited testimony concerning the circumstances of Mother's location and her knowledge of the proceedings from September 10–15, 2004. The district court found that the temporary guardianship was not established in violation of the guardianship statutes. On November 16, 2004, the district court entered its order denying Mother's motion to dissolve the temporary guardianship.

[¶ 12] The parties stipulated to continue the November 29th hearing on the merits of the guardianship until December 2, 2004. During that hearing, Grandparents presented testimony of several witnesses, and the

---

4. Mother denies having received pleadings pertaining to the temporary guardianship at that time.

district court interviewed MEO *in camera.*[5] Grandparents completed their evidentiary presentation, but time constraints prevented Mother from presenting her case. A second hearing was scheduled for December 23, 2004, when it was contemplated that Mother would present her case. Subsequent to that scheduling, on December 14, 2004, Mother appealed from the November order denying her motion to dissolve the temporary guardianship.

[¶ 13] After Mother filed her notice of appeal pertaining to the temporary guardianship, Guardians requested that the hearing scheduled for December 23, 2004, be vacated, claiming Mother's appeal deprived the district court of jurisdiction. On December 22, 2004, the district court, finding lack of jurisdiction because of the appeal, entered an order vacating the scheduled evidentiary hearing. Mother then petitioned this Court for a writ of review. We granted the petition, and on January 26, 2005, issued an order reversing the district court's order vacating the hearing.[6] A hearing on the merits of the guardianship was eventually scheduled for March 30, 2005.

[¶ 14] Instead of staying in Laramie until the postponed hearing in March, the Grandparents decided to return to their home in Texas. In December 2004, Grandparents and MEO relocated to Texas where MEO enrolled in high school. On March 7, 2005, Mother filed a motion requesting that the district court establish a visitation schedule and asked for a prompt hearing on her request. The district court held a hearing on March 11, 2005, and ordered that MEO spend time during her spring break with Mother in Laramie.

[¶ 15] On March 30, 2005, the district court completed the hearing on the merits of the guardianship. At the beginning of the hearing, Mother moved for judgment as a matter of law, asserting that Grandparents had failed to prove her unfit. Grandparents denied they had the burden of proving parental unfitness and contended the inquiry was limited to a determination of MEO's best interests. The district court took the matter under advisement. At the hearing, MEO testified by telephone. Mother also testified and presented the testimony of several witnesses.

[¶ 16] The district court issued a decision letter on May 27, 2005. The court found that Mother was not an unfit parent. Nevertheless, the district court concluded a permanent guardianship was necessary because it was in MEO's best interests. An order establishing the guardianship was entered on July 6, 2005. This appeal followed. After the instant appeal was filed, Mother's appeal from the order refusing to dissolve the temporary guardianship was dismissed.

## STANDARD OF REVIEW

[¶ 17] We presume the district court's findings of fact are correct and will not set them aside unless the findings are inconsistent with the evidence, clearly erroneous or contrary to the great weight of the evidence. *In re Estate & Guardianship of Paul K. Andrews v. United States Dep't of Veteran Affairs,* 2002 WY 17, ¶ 15, 39 P.3d 1021, 1025–1026 (Wyo.2002). Additionally, we review a district court's conclusions of law *de novo. Id.* Construction of the guardianship statutes involves a question of law which we review *de novo. In re Guardianship of McNeel,* 2005 WY 36, ¶ 11, 109 P.3d 510, 513 (Wyo.2005).

## DISCUSSION

[¶ 18] Guardianship matters are controlled and governed exclusively by stat-

---

5. Mother stipulated to MEO being interviewed in chambers, so long as it was recorded by the court reporter. After the interview, the district court announced, *sua sponte,* that the record of the interview would be sealed and that it would not be provided to the parties in the absence of a very good reason. A transcript of the interview with MEO does not appear in the record on appeal.

6. We concluded that the appeal from the temporary guardianship had not yet been docketed when the hearing was vacated. Had the appeal been docketed, we concluded that the district court was not required to vacate the hearing on the merits of a permanent guardianship, recognizing a distinction between the temporary guardianship and the permanent guardianship proceedings.

ute. *State ex rel. Klopotek v. Dist. Court*, 621 P.2d 223, 227 (Wyo.1980). Mother asserts the district court's reading and application of the statutes was erroneous.[7] To resolve Mother's claims, we apply established principles of statutory interpretation:

> We begin by making an inquiry respecting the ordinary and obvious meaning of the words employed according to their arrangement and connection. We construe the statute as a whole, giving effect to every word, clause, and sentence, and we construe all parts of the statute in *pari materia*. When a statute is sufficiently clear and unambiguous, we give effect to the plain and ordinary meaning of the words and do not resort to the rules of statutory construction.

*Shumway v. Worthey*, 2001 WY 130, ¶ 8, 37 P.3d 361, 365 (Wyo.2001).

[¶ 19] "Our rules of statutory interpretation require that we, in seeking legislative intent, must find a consistent and realistic intendment which includes the presumed desire of the legislature to recognize its legislative duty to act constitutionally." *Appleby v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2002 WY 84, ¶ 28, 47 P.3d 613, 622 (Wyo.2002). See also *Kunkle v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2005 WY 49, ¶ 11, 109 P.3d 887, 890 (Wyo. 2005). That duty includes "providing for constitutionally guaranteed interests." *Parker Land & Cattle Co. v. Wyoming Game & Fish Comm'n*, 845 P.2d 1040, 1081 (Wyo. 1993). As a reviewing court, we have a duty to uphold the constitutionality of statutes which the legislature has enacted if that is at all possible, and any doubt must be resolved in favor of constitutionality. *In re Adoption of RHA*, 702 P.2d 1259, 1265 (Wyo.1985).

7. Several provisions of Wyoming's guardianship statutes are pertinent to our resolution of this appeal. The relevant statutes provide:

**§ 3–2–101. Petition for appointment of guardian.**

(a) Any person may file with the clerk a petition for the appointment of a guardian. The petition shall state:

(i) The name, age and address of the proposed ward;

(ii) The status of the proposed ward as a minor, an incompetent person or a mentally incompetent person and the reasons for the petition;

(iii) The name and address of the proposed guardian, and his qualification as a fit and proper person to serve as guardian;

(iv) The residence of the proposed ward in the county or his presence in the county;

(v) The facts to show that the best interest of the proposed ward requires the appointment of a guardian in this state;

(vi) The name and address of the person or facility having the care, custody or control of the proposed ward; and

(vii) The interests of the petitioner.

**§ 3–2–102. Notice; when required; governed by rules of civil procedure.**

(a) Notice of filing of a petition for appointment of an involuntary guardianship shall be served on the proposed ward, his custodian and the proposed guardian.

(b) Notice of filing of a petition for appointment of an involuntary guardianship shall be served on the proposed ward's parents, spouse and adult children who are known or who can be discovered with due diligence, except:

(i) When a petition is filed under W.S. 3–2–108; or

(ii) When for good cause the court determines that no notice is necessary if the proposed ward is under the age of eighteen (18) years.

(c) Notice shall be served on any other person as ordered by the court.

(d) Notice shall be given in accordance with the Wyoming Rules of Civil Procedure and as ordered by the court.

**§ 3–2–104. Appointment of guardian.**

(a) The court may appoint a guardian if the allegations of the petition as to the status of the proposed ward and the necessity for the appointment of a guardian are proved by a preponderance of the evidence.

(b) The order appointing a guardian shall state the findings of the court, including:

(i) The reasons why the ward is in need of a guardian;

(ii) The appointment of the guardian;

(iii) The duration of the appointment for a specified term or permanent, subject to W.S. 3–3–1101;

(iv) The limited or plenary duties of the guardian.

**§ 3–2–106. Appointment of a temporary or emergency guardian.**

(a) Upon the filing of a petition for a temporary guardian and after a hearing the court may appoint a temporary guardian subject to any notice and conditions the court prescribes.

. . .

(LexisNexis 2003). Additionally, Wyo. Stat. Ann. § 3–2–201(e) (LexisNexis 2003) states, in pertinent part: "The guardian of a minor has the powers and responsibilities of a parent who has not been deprived of custody of his unemancipated minor child."

[¶ 20] We recognize that the guardianship statutes may have application in a variety of circumstances. Guardians may be appointed for a minor or for an incompetent person. Wyo. Stat. Ann. § 3–2–101(a)(ii) (LexisNexis 2003). Additionally, the powers of a guardian may be limited in nature or plenary. Wyo. Stat. Ann. § 3–2–104(b)(iv) (LexisNexis 2003). In this appeal, we are presented with a plenary involuntary guardianship of a minor established over her custodial parent's objection. Consequently, we are guided by important constitutional principles regarding the parent-child relationship.

[¶ 21] The right to familial association is a fundamental right protected by both the Wyoming and the United States Constitutions. *TOC v. TND (In re TLC)*, 2002 WY 76, ¶ 10, 46 P.3d 863, 868 (Wyo. 2002); *Stanley v. Illinois*, 405 U.S. 645, 651, 92 S.Ct. 1208, 1213, 31 L.Ed.2d 551, 559 (1972). We have recognized:

> Parents enjoy a constitutionally protected fundamental right to "make decisions concerning the care, custody, and control of their children." *Troxel v. Granville*, 530 U.S. 57, 66, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000); *see also Michael v. Hertzler*, 900 P.2d 1144, 1147 (Wyo.1995). This fundamental right has been recognized as a liberty interest protected under the Fifth and Fourteenth Amendments to the United States Constitution, and is also found in Wyo. Const. art. 1, § 6, which provides, "[n]o person shall be deprived of life, liberty or property without due process of law." *Michael*, 900 P.2d at 1147. In *Troxel*, the United States Supreme Court discussed this principle:
>
> > The liberty interest at issue in this case—the interest of parents in the care, custody, and control of their children—is perhaps the oldest of the fundamental liberty interests recognized by this Court. More than 75 years ago, in *Meyer v. Nebraska*, 262 U.S. 390, 399, 401, 43 S.Ct. 625, 67 L.Ed. 1042 (1923), we held that the "liberty" protected by the Due Process Clause includes the right of parents to "establish a home and bring up children" and "to control the education of their own." Two years later, in

> > *Pierce v. Society of Sisters*, 268 U.S. 510, 534–535, 45 S.Ct. 571, 69 L.Ed. 1070 (1925), we again held that the "liberty of parents and guardians" includes the right "to direct the upbringing and education of children under their control."
> >
> > *Troxel*, 530 U.S. at 65, 120 S.Ct. 2054, 147 L.Ed.2d 49. " 'It is cardinal with us that the custody, care and nurture of the child reside first in the parents....' " *Nulle v. Gillette–Campbell County Joint Powers Fire Bd.*, 797 P.2d 1171, 1174 (Wyo.1990) (*quoting Prince v. Massachusetts*, 321 U.S. 158, 166, 64 S.Ct. 438, 88 L.Ed. 645 (1944)).

*MBB v. ERW*, 2004 WY 134, ¶ 9, 100 P.3d 415, 418–419 (Wyo.2004).

### Ex Parte Temporary Involuntary Guardianship

[¶ 22] In her first issue, Mother contends that Grandparents obtained temporary guardianship of MEO without adherence to the statutory requirements for notice and a hearing. She points to the language of Wyo. Stat. Ann. § 3–2–106(a) (LexisNexis 2003) (emphasis added), which states: "Upon the filing of a petition for a temporary guardian **and after a hearing** the court may appoint a temporary guardian subject to any notice and conditions the court prescribes." Mother asserts that the district court was required to hold a hearing before appointing temporary guardians and, in this case, no hearing was held.

[¶ 23] After the temporary guardianship had been in place for nearly two months, the district court considered Mother's procedural objections. At that time, the district court considered the requirements of Wyo. Stat. Ann. § 3–2–106(a) and § 3–2–102 and affirmed its *ex parte* appointment of Grandparents as temporary guardians. In response to Mother's challenge regarding the lack of notice she had received prior to the appointment, the district court stated:

> The crux of the argument here is that there was no formal notice to [Mother], and, essentially, a lack of due diligence to determine whether or not she was back in town. Under the Statute, the Court is of the opinion that even had it known that she was in town, even had it—well, quite

frankly, it could have said, even under those circumstances, notice was not required under the facts alleged in this Petition for this temporary guardianship.

Essentially, the district court determined that Mother was not entitled to notice of, or the right to appear at, any hearing that might have been held prior to appointment because the language of § 3–2–106(a), "subject to any notice and conditions the court prescribes," could mean "no notice."

[¶ 24] Additionally, the district court mentioned Wyo. Stat. Ann. § 3–2–102(b), which provides:

> Notice of filing of a petition for appointment of an involuntary guardianship shall be served on the proposed ward's parents, spouse and adult children who are known or who can be discovered with due diligence, except:
>
> . . .
>
> (ii) When for good cause the court determines that no notice is necessary if the proposed ward is under the age of eighteen (18) years.

Considering the exception in § 3–2–102(b)(ii), the district court determined that it was afforded discretion to dispense with the notice requirements because MEO was a minor. The court concluded that "there are no constitutional requirements that a parent have notice and an opportunity to be heard before the Court may enter an order appointing a temporary guardian[ ], as is required in a more formal and strict proceeding."

[¶ 25] Grandparents endorse the district court's rationale but urge us to avoid review. They assert that any issues involving the temporary guardianship are now moot. Grandparents reason that all disputes between the parties were resolved when the district court appointed them permanent guardians of MEO, and upon that appointment, the temporary guardianship terminated and had no legal effect.[8] They claim that

any decision on this issue would not be meaningful to the parties or any future litigant. Accordingly, Grandparents conclude that there is no justiciable controversy relating to establishment of the temporary guardianship.

[¶ 26] We have previously considered the connection between Mother's challenge to the temporary guardianship and the order establishing the permanent guardianship. Mother appealed the district court's refusal to terminate the temporary guardianship. Once the guardianship was made permanent, Grandparents moved to dismiss the temporary guardianship appeal on mootness grounds. On August 4, 2005, we dismissed the appeal. However, our order of dismissal specifically allowed Mother to assert arguments she presented in the dismissed appeal, in this case. Understandably, Mother appears to have relied upon our order in stating her first issue.

[¶ 27] In light of Grandparents' extensive briefing on mootness, we would be remiss if we did not examine whether a justiciable controversy is present. "A court should not hear a case where there has been a change in circumstances occurring either before or after a case has been filed that eliminates the controversy." *Southwestern Pub. Serv. Co. v. Thunder Basin Coal Co.*, 978 P.2d 1138, 1143 (Wyo.1999) (citing *International Ass' n of Fire Fighters, Local 279 v. Civil Service Comm'n of Fire Dep' t of City of Cheyenne*, 702 P.2d 1294, 1297 (Wyo. 1985)).

> The doctrine of mootness encompasses those circumstances which destroy a previously justiciable controversy. This doctrine represents the time element of standing by requiring that the interests of the parties which were originally sufficient to confer standing persist throughout the duration of the suit. Thus, the central question in a mootness case is "whether decision of a once living dispute continues to be justified by a sufficient prospect that the

---

8. Additionally, Grandparents assert that Mother's complaint is moot because emergency *ex parte* guardianship procedures are now specifically authorized by statute, Wyo. Stat. Ann. § 3–2–302(b) (LexisNexis 2005). We find no merit in this argument because emergency appointments were authorized at the time Grandparents filed their petition. However, Grandparents did not seek to obtain emergency guardianship. Rather, they sought temporary and permanent plenary guardianship of MEO. The newly enacted *ex parte* emergency procedures for guardianship limited to "educational, medical care and dental care purposes" are not relevant to our determination.

decision will have an impact on the parties."

*Southwestern Pub. Serv. Co.,* 978 P.2d at 1143 (citations omitted).

[¶ 28] A case will not be considered moot when it presents a controversy capable of repetition yet evading review. *In re RM,* 2004 WY 162, ¶ 9, 102 P.3d 868, 871 (Wyo.2004). The parties disagree whether this case is one "capable of repetition, yet evading review." Under such a rationale two requirements must be met. "First, the duration of the challenged action must be too short for completion of litigation prior to its cessation or expiration. Second, there must be a reasonable expectation that the same complaining party will be subjected to the same action again." *Grant v. Meyer,* 828 F.2d 1446, 1449 (10th Cir.1987) (citing *Illinois State Board of Elections v. Socialist Workers Party,* 440 U.S. 173, 187, 99 S.Ct. 983, 992, 59 L.Ed.2d 230 (1979); *Weinstein v. Bradford,* 423 U.S. 147, 149, 96 S.Ct. 347, 349, 46 L.Ed.2d 350 (1975)). Absent a finding of good cause, a temporary guardianship is statutorily limited to a maximum of one year, making it unlikely that litigation regarding a temporary guardianship could reach fruition before its expiration.[9] Because MEO is still a minor, it is not outside the realm of reasonable possibility that Grandparents would continue to pursue guardianship of MEO. Additionally, other courts have rejected claims that temporary guardianship issues are mooted by the passage of time because of the importance of the interests involved and the perception that such controversies would rarely persist for the duration of appellate disposition. *E.g., Custody of Lori,* 444 Mass. 316, 827 N.E.2d 716, 717 (2005); *Jason S. v. Valley Hosp. Med. Ctr. (In re L.S.),* 120 Nev.157, 87 P.3d 521, 524 (2004).

[¶ 29] Mother's claim does not concern a temporary circumstance that has since dissipated. Mother continues to be deprived of the custody of her daughter, and by this appeal she challenges how those circumstances arose. Considering a similar challenge to a permanent guardianship involving contentions that the preceding temporary guardianship had been established without notice, the Vermont Supreme Court concluded:

> We think that the petitioners were entitled to notice and opportunity to present evidence of their circumstances, characters, and habits before an order should be made to deprive them of their natural right of guardianship over their minor child and their right to her services during her minority. They were entitled to have these considerations presented to the probate court as a guide to the exercise of its discretion in passing upon the question of guardianship.
>
> The petitionee argues that the absence of notice is not now material, because in the present proceeding to vacate guardianship the petitioners Bioni have appeared and have been heard at length in the probate court and in the county court on appeal, and that the case has now been decided upon its merits and the guardian continued in office. But the issue in this proceeding was whether the appointment was invalid, by reason of the defects assigned, and not whether the welfare of Mary required ... the continuance of the guardianship. The relative fitness of Mr. and Mrs. Bioni and of Mrs. Haselton was beside the point. The appointment of the latter having been made without notice, the proceedings in the probate court, for that purpose, were coram non judice and void.

*Bioni v. Haselton,* 99 Vt. 453, 134 A. 606, 608 (1926).

[¶ 30] The record demonstrates that the temporary guardianship formed the basis for the district court's decision that is the subject of this appeal. The district court awarded the care, custody, and control of MEO to Grandparents in September. MEO moved to Texas a few months later. The temporary guardianship created circumstances that

---

9. Wyo. Stat. Ann. § 3–2–106(c) (LexisNexis 2003) states:

 (c) Except upon a showing of good cause, an order appointing a temporary guardian of a minor ward shall be limited to not more than one (1) year.

were critically important to the district court's analysis of MEO's best interests following the hearing on March 30, 2005. In its decision letter, the district court discussed MEO's best interests by comparing her experiences in Laramie to her circumstances in Texas. The district court also emphasized MEO's testimony "that her strong desire is to remain in her current situation and she has stated a number of reasons for her preference." The district court afforded considerable weight to this expressed preference. The district court used Grandparents' temporary guardianship as the measuring stick of MEO's best interests, and by that measure, Mother was permanently denied the care, custody, and control of her daughter. We decline to view Mother's challenge to the temporary guardianship as moot where it is clear that the circumstances created by it directly impacted the permanent guardianship determination.

 [¶ 31] Turning then to the merits of Mother's argument, we address the district court's conclusion that an involuntary temporary guardianship of a minor may be granted to third parties without notice to a parent and without a hearing. The State, as Intervenor, asserts that when read properly, the guardianship statutes afford adequate procedural protections to a parent and are not constitutionally suspect.[10] The State concludes that Wyo. Stat. Ann. § 3–2–102(b) requires that notice of the filing of an involuntary guardianship be given to the parents of the proposed ward and that Wyo. Stat. Ann. § 3–2–102(d) requires that notice shall be given pursuant to the Wyoming Rules of Civil Procedure. According to the State, "[r]eading these statutes and the [Rules of Civil Procedure] together leads to the conclusion that a petition for an involuntary guardianship, temporary or permanent, must be served upon the proposed ward's parents." Additionally, the State asserts that a parent will receive an opportunity to be heard because "[t]he plain language of [Wyo. Stat.

Ann. § 3–2–106(a) ] requires a hearing before the appointment of a temporary guardian, satisfying due process requirements in that regard." The State asserts that the statutes are constitutional and afford adequate due process, if applied correctly.[11] We agree. In this case, however, we cannot conclude that the district court properly applied the statutes.

[¶ 32] By statute, the notice of an involuntary guardianship proceeding "shall be given in accordance with the Wyoming Rules of Civil Procedure and as ordered by the court." Wyo. Stat. Ann. § 3–2–102(d). There is no dispute that Mother was not served with notice that complied with the Wyoming Rules of Civil Procedure. Because there was no summons, Mother was not informed of the time period she had to respond, how to respond, or what the consequences might be if she failed to respond. W.R.C.P. 4. Had she been properly served and the Wyoming Rules of Civil Procedure followed, Mother would have had time to respond before the requested relief was granted. As for the district court's interpretation of the "subject to any notice" language in § 3–2–106, we disagree that "any notice" can mean no notice. Read in conjunction with the notice requirements set forth in § 3–2–102 applicable to involuntary guardianships, we conclude that the notice language of § 3–2–106(a) authorizes the district court to prescribe additional or supplemental notice.

[¶ 33] At the November hearing, the district court appeared to rely upon the exception stated in § 3–2–102(b)(ii) in reaching its conclusion that Mother was not entitled to notice before the temporary guardianship was established. We note that § 3–2–102(b) lacks some linguistic and structural precision and question whether the exception to notice in subsection (b)(ii) applies in this context. However, we need not reach that determination because the record is beyond dispute

---

10. In her appeal from the temporary guardianship proceedings, Mother challenged the constitutionality of the guardianship statutes. She has not made that assertion in the case *sub judice.* However, because of some lingering questions about the scope of Mother's claims in this ap-

peal, the State intervened in defense of the statutes.

11. The State makes no comment concerning whether the statutory requirements were met in this case.

that prior to issuing the temporary guardianship order, the district court failed to make any finding of good cause to excuse the notice requirement. We find nothing in the record presented to us suggesting that good cause existed to excuse notice to Mother prior to appointing Grandparents as guardians.

[¶ 34] Mother's procedural challenge to the temporary guardianship implicates constitutional principles as well. When a parent's fundamental liberty interest is at stake, the State must provide parents "with fundamentally fair procedures." *Santosky v. Kramer*, 455 U.S. 745, 753–54, 102 S.Ct. 1388, 1394–95, 71 L.Ed.2d 599 (1982). We have observed that:

> ... custody litigation imperils parents' fundamental right to enjoy their children's companionship and to direct their children's upbringing. This peril is magnified by the difficulty of regaining physical custody once lost. The great weight of the parental liberty interest, together with the significant deprivation of that interest inherent in a loss of physical custody, entitles parents to custody procedures that meet the requisites of due process.

*KES v. CAT*, 2005 WY 29, ¶ 16, 107 P.3d 779, 784 (Wyo.2005). Notice and the opportunity to be heard "are unquestionably incidental to affording due process of law." *Barker Bros., Inc. v. Barker–Taylor*, 823 P.2d 1204, 1208 (Wyo.1992). Thus, we have held that "a court must afford a parent notice and a meaningful opportunity to be heard before it can deny the parent custody of his or her children." *Loghry v. Loghry*, 920 P.2d 664, 667 (Wyo.1996) (citing *Hall v. Hall*, 708 P.2d 416, 421 (Wyo.1985)). *See also Jackson v. Jackson*, 961 P.2d 393, 395 (Wyo.1998) ("Parents are entitled to due process in custody and visitation matters, which includes adequate notice and an opportunity to be heard.").

[¶ 35] Inexplicably, the district court concluded that Mother did not have a constitutional right to either notice or a hearing. We recognize that due process is a somewhat fluid concept, but the district court's conclusion is inconsistent with these fundamental constitutional protections. Due process requires that "notice and the opportunity to be heard must be appropriate to the nature of the case." *DH v. Wyo. Dep't of Family Servs. (In re "H" Children)*, 2003 WY 155, ¶ 39, 79 P.3d 997, 1008 (Wyo.2003). The notice and hearing opportunity must also be "at a meaningful time and in a meaningful manner." *Jones v. Jones*, 903 P.2d 545, 548 (Wyo.1995). Lack of notice is not, by any definition, meaningful notice.

[¶ 36] More significantly, the district court's failure to hold a hearing before making the temporary appointment deprived Mother of a meaningful opportunity to be heard. The fact that a hearing was scheduled two months away provided little consolation. *See Custody of Lori*, 827 N.E.2d at 721 (court held that mother was deprived of due process where "the judge did not hold a hearing on the issue of the child's custody or the mother's unfitness before removing the child" and she "was not permitted to defend herself against the charge of unfitness at the time of removal" and an evidentiary hearing "did not occur until five months after the initial removal").

[¶ 37] Grandparents contend that the requirement for a hearing was met, arguing that the district court "considered evidence" as recited in its order appointing them on a temporary basis. We find no merit in Grandparents' assertion. The recital in the order is merely *pro forma*. There is no indication that any hearing was scheduled, noticed, held, or even contemplated, before the order issued. We do not believe that, in the context of an involuntary guardianship of a minor, the "after a hearing" language in § 3–2–106(a) can be satisfied by a mere review of the allegations of the petition.

[¶ 38] When addressing fundamental parental rights of constitutional magnitude, courts "must accommodate to the keenest spirit of procedural due process." *BDR v. BEB (In re BJB)*, 888 P.2d 216, 219 (Wyo.1995). "One of the basic elements of due process is the right of each party to be apprised of all the evidence upon which an issue is to be decided, with the right to examine, explain or rebut such evidence." *KES*, ¶ 16, 107 P.3d at 784. "[T]he right to

hear and controvert all evidence upon which a factual adjudication is to be made includes the right to hear and cross-examine witnesses." *JLJ v. AFM (In re SAJ)*, 942 P.2d 407, 410 (Wyo.1997). Consistent with these principles, we have cautioned that child custody and visitation issues should be determined after an evidentiary hearing. *Id.* at 410 (district court abused its discretion in modifying Mother's visitation without affording meaningful opportunity to be heard or providing for development of evidentiary record); *In re Adoption of BBC*, 849 P.2d 769, 773 (Wyo.1993) (remand for hearing did not allow district court to establish guardianship without hearing).

[¶ 39] A hearing should have been afforded Mother to satisfy the basic element of due process even in the absence of a statutory requirement. However, a hearing was a statutory requirement. The district court simply ignored the unambiguous requirement of § 3–2–106(a) to hold a hearing before appointing Grandparents as guardians.[12]

[¶ 40] Mother has demonstrated that she has a fundamental interest that has been affected in an impermissible way. Private action affecting a parent's interest in the care, custody, and control of her child may only be accomplished by court action taken pursuant to appropriate statutory authority. *MBB*, ¶ 10, 100 P.3d at 419. The district court erred in appointing Grandparents temporary guardians of MEO without adherence to the statutory requirements regarding notice and a hearing. Without affording Mother proper notice and an opportunity to be heard, the district court's establishment of the temporary guardianship lacked "fundamental fairness." *Meyer v. Norman*, 780 P.2d 283, 289 (Wyo.1989). These procedural

defects cast a shadow over the permanent guardianship as well. Mother presents additional arguments concerning the validity of the permanent guardianship that deserve our attention.

### *Permanent Involuntary Guardianship*

[¶ 41] In her second issue, Mother claims that the district court's order establishing the permanent guardianship of MEO violated her fundamental parental rights. She claims that guardianship of a minor should only be awarded to a non-parent over the objection of the parent if it is proven that the parent is unfit. Mother claims that because she was found to be a fit parent, no guardianship was necessary. In response, Grandparents state that the pertinent statutory language is plain and unambiguous in requiring only a best interests analysis.

[¶ 42] Under Wyoming's guardianship statutes, the district court may appoint a guardian for a proposed minor ward when it finds that the ward's status as a minor and the "necessity for the appointment of a guardian" have been "prove[n] by a preponderance of the evidence." Wyo. Stat. Ann. § 3–2–104(a). When making an appointment, the district court must articulate its findings regarding the necessity of the guardianship. *In re McNeel*, ¶ 24, 109 P.3d at 518.

[¶ 43] The parties disagree whether a minor's best interests, in the absence of a finding of parental unfitness, may create a "necessity" for a guardianship. Mother claims that unless a parent is unfit, a guardianship is not authorized. According to Grandparents, a minor's interests trump the interests of the parent. Grandparents contend that Mother's rights have not been infringed to a

12. It appears, in some ways, the district court treated the petition as if based upon an emergency, but the statutory provisions concerning emergency guardians was not cited nor followed. Wyo. Stat. Ann. § 3–2–106(d) through (h). Appointment of an emergency guardian must follow a hearing when possible, and appointment of a *guardian ad litem* is required immediately. Wyo. Stat. Ann. § 3–2–106(d). If harm may result to the ward before a hearing can be held, then an emergency guardian may be appointed without a hearing. Wyo. Stat. Ann. § 3–2–106(e). In that event, a hearing must be held within 72 hours of the appointment. Wyo. Stat. Ann. § 3–2–106(e). The exception for *ex parte* appointments in an emergency is very narrow. Even when that exception is supported by evidence, the statute requires reasonable notice, and the requirement for a hearing is not excused altogether. Consistent with the signposts of due process, the emergency guardianship procedures provide for notice and a hearing. Such provision highlights the flaws in the district court's reasoning that no notice or hearing was required before appointing Grandparents in a non-emergency.

substantial degree because the guardianship is a temporary, court-monitored custody arrangement that did not sever Mother's parental rights. Additionally, they argue that Mother's statutory interpretation is faulty because it injects language into the statute that is not there. Grandparents assert that the plain language of the statute does not require that the district court make any finding concerning parental unfitness. Grandparents insist that the only standard in a guardianship proceeding is the minor's best interests. Thus, they conclude that "necessity" for a guardianship arises solely from an analysis of a minor's best interests.

[¶ 44] The district court identified two possible standards for finding the necessity for a guardianship: 1) a finding of parental unfitness; or 2) a finding that it would be in the best interests of MEO. The district court found that either standard seemed to be supported by Wyoming case law. In its decision letter, the district court determined:

> It is apparent from [*In re Kosmicki*, 468 P.2d 818, 823–824 (Wyo.1970) ] that Wyoming, first, recognizes a presumption that the best interests of the child are served by establishing a parent as the guardian. Second, courts are to consider the evidence regarding whether that parent is unfit *or* if the best interests of the child are better served by placement with an alternate guardian. Essentially, the parent enters the proceedings with the presumption in her favor; the guardians then must demonstrate, pursuant to the statutory standard, that the parent is not fit *or* that it is not in the child's best interests to return to the parent.
>
> ... Wyoming has determined the Court should continue with a best interests analysis in light of the concept that the interests of the parent are secondary to the interests of the child[.]

(Emphasis in original and footnote omitted.) The district court quoted language from *Morris v. Jackson*, 66 Wyo. 369, 212 P.2d 78,

82 (1949), stating "... the child's welfare is the supreme consideration, irrespective of the rights and wrongs of its contending parents, although the natural rights of the parents are entitled to due consideration." Additionally, the district court opined that a fifteen-year-old child could request appointment of her own guardian by filing a voluntary petition under Wyo. Stat. Ann. § 3–2–105 (LexisNexis 2003), requiring a determination of the child's best interests.

[¶ 45] The district court concluded that it was required to apply both standards. First, it would determine if Mother had been proven to be an unfit parent. If Mother was not unfit, the district court would next consider, "whether it would be in [MEO]'s best interests that she remain with her grandparents in any event." Following that analysis, the district court found that Mother was not unfit but concluded that a guardianship was in MEO's best interests. Mother claims that this two-part analysis was flawed. She argues that once the issue of her fitness was resolved in her favor, the district court should not have proceeded to analyze MEO's best interests. Mother contends that if a parent is fit, there can be no finding that a guardianship for the child is "necessary" under § 3–2–104.

[¶ 46] The "necessity" for appointment of a guardian is not further defined in the guardianship statutes. The term "necessity" means the "condition or quality of being necessary" or the "state ... of being in need." American Heritage College Dictionary 929 (4th ed.2004). Necessary generally means essential or required.[13] When appointing a guardian, the district court must state its findings concerning the "reasons why the ward is in need of a guardian." Wyo. Stat. Ann. § 3–2–104(b)(i).

[¶ 47] A parent is the natural guardian of her child. *State ex rel. Klopotek*, 621 P.2d at 227. For a minor, a court appointed guardian assumes the role of a parent. That relationship is described in Wyo.

---

13. For example, as defined by the American Heritage College Dictionary 929 (4th ed.2004), necessary means:

1. Absolutely essential. See Syns at indispensable. 2. Needed to achieve a certain result or effect; requisite. 3a. Unavoidably determined by conditions or circumstances. b. Logically inevitable. 4. Required by obligation, compulsion, or convention.

Stat. Ann. § 3–2–201(e), which provides: "The guardian of a minor has the powers and responsibilities of a parent who has not been deprived of custody of his unemancipated minor child." A determination by a district court that a minor is in need of a plenary guardian is, therefore, akin to a finding that the minor needs a parent.

[¶ 48] Here, the district court found that MEO was "in need of a guardian." However, this finding was accompanied by a finding that Mother was not unfit. The district court concluded: "Simply stated, the Court does not believe that the record in this matter would support a finding that [KO] is an unfit mother.... The Court concludes, therefore, that [KO] is not an unfit parent and that grounds for continuation of this guardianship do not exist on this basis." Despite Mother's apparent ability and willingness to parent MEO, the district court determined that Grandparents should have that role. The district court justified that decision by concluding that it would be in MEO's best interests.

[¶ 49] Throughout their argument, Grandparents emphasize the district court's findings that Mother did not serve MEO's best interests to the same extent they have. In essence, they contend their ability to provide more for MEO supported the "necessity" for a different custodial arrangement for MEO. They urge us to defer to the district court's discretionary appointment and affirm the guardianship. However, Grandparents fail to recognize the constitutional implications of reading the statute in this way.

[¶ 50] The constitutional protections afforded to parents are not reserved for those who are perfect. "The fundamental liberty interest of natural parents in the care, custody, and management of their child does not evaporate simply because they have not been model parents...." *Santosky*, 455 U.S. at 753–54, 102 S.Ct. at 1394–95. "Even when blood relationships are strained, parents retain a vital interest in preventing the irretrievable destruction of their family life." *Id.* "[S]o long as a parent adequately cares for his or her children (i.e., is fit), there will normally be no reason ... to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children." *Troxel v. Granville*, 530 U.S. 57, 68–69, 120 S.Ct. 2054, 2061, 147 L.Ed.2d 49 (2000).[14]

[¶ 51] The district court's determination that a guardianship was warranted was based solely upon an analysis of MEO's best interests. However, courts have denounced use of the best interests standard as the sole justification for altering a family unit, finding it at odds with a parent's rights.

> We have little doubt that the Due Process Clause would be offended "[if] a State were to attempt to force the breakup of a natural family, over the objections of the parents and their children, without some showing of unfitness and for the sole reason that to do so was thought to be in the children's best interest."

*Quilloin v. Walcott*, 434 U.S. 246, 255, 98 S.Ct. 549, 554, 54 L.Ed.2d 511 (1978) (quoting *Smith v. Organization of Foster Families,*

14. In the context of guardianships, many courts recognize limited exceptions to this principle. *E.g., Barstad v. Frazier*, 118 Wis.2d 549, 348 N.W.2d 479, 483 (1984) ("compelling reasons"); *In re Guardianship of Williams*, 254 Kan. 814, 869 P.2d 661, 670 (1994) ("highly unusual or extraordinary circumstances"); *Worden v. Worden*, 434 N.W.2d 341, 342 (N.D.1989) ("exceptional circumstances"); *Thomas–Lott v. Earles*, 132 N.M. 772, 55 P.3d 984, 994 (App.2002) ("exceptional circumstances"). Generally, these exceptions acknowledge a child's real family unit or emotional attachment, or take account of a biological parent's failure to accept parental responsibility. *E.g., In re Barros*, 701 N.W.2d 402, 409 (N.D.2005) (voluntary guardianship constitutes exceptional circumstances); *In re Buchholz*, 326 N.W.2d 203, 207 (N.D.1982) (excep-tional circumstances exist when custody dispute pits psychological parent against natural parent); *Bennett v. Jeffreys*, 40 N.Y.2d 543, 387 N.Y.S.2d 821, 356 N.E.2d 277, 284 (1976) (child in custody of nonparent for so long that psychological trauma of removal threatens child); *Barstad v. Frazier*, 118 Wis.2d 549, 348 N.W.2d 479, 489 (1984) (compelling reasons include abandonment, persistent neglect of parental responsibilities, extended disruption of parental custody, or other extraordinary circumstances drastically affecting welfare of child). In this case, these exceptions, and the rationale supporting them, have not been presented to us for consideration and do not appear applicable to MEO's circumstances when Grandparents petitioned for guardianship.

431 U.S. 816, 862–863, 97 S.Ct. 2094, 53 L.Ed.2d 14 (1977) (Stewart, J., concurring in judgment)).

Our case law does not permit destruction of a natural parent's fundamental right to the custody of his or her child based simply on the subjective determination of that child's best interest. Were we to allow such a result, the implications are obvious. Is it in a child's best interest that he or she be raised in an affluent family as opposed to an impoverished family? Would it be better that a child be raised by extremely intelligent parents rather than people of average intelligence? Is a child better off if that child is raised in a conventional life style rather than an unconventional life style? All of these factors could arguably be considered in determining the child's best interests. However, none even remotely justify denying a parent's constitutional and fundamental right to the custody of his or her child.

*In re Parenting of J.N.P. v. Knopp,* 305 Mont. 351, 27 P.3d 953, 958 (2001). Indeed, "... the best interests standard, taken to its logical conclusion, would place the minor children of all but the 'worthiest' members of society in jeopardy of a custody challenge." *Carla R. v. Tim H. (In re D.J.),* 268 Neb.239, 682 N.W.2d 238, 245 (2004).

[¶ 52] Grandparents attempt to avoid constitutional implications by characterizing the guardianship as a minor infringement upon Mother's parental rights. They deem it significant that Mother's rights have not been terminated and that she retained residual rights over MEO. Although we agree that Mother's rights have not been terminated, we disagree that the infringement upon her rights is "minimal." Pursuant to § 3–2–201(e), Grandparents essentially replaced Mother in MEO's daily life. Losing custody of a child to a non-parent alters the parent-child relationship:

Under ordinary circumstances, a custody action by a third party against a natural parent is more like a termination action than a custody action between biological parents. Although visitation may be preserved, such an award destroys any pretense of a normal parent-child relationship

and eliminates nearly all of the natural incidents of parenthood including the everyday care and nurturing which are part and parcel of the bond between a parent and child.

*Zack v. Fiebert,* 235 N.J.Super. 424, 563 A.2d 58, 63 (A.D.1989).

"Custody" may imply a temporary arrangement that theoretically could be changed as future circumstances might warrant. But a change of custody may result in ... a severance of child-parent ties.... The day to day contact between the child and one having custody can create a relationship that may leave the birth parent almost an intruder. All of the day to day interactions between a parent and child are bound to be diminished if not eliminated where the parent comes on the scene as a court permitted "visitor."

*Barstad v. Frazier,* 118 Wis.2d 549, 348 N.W.2d 479, 483 (1984). Contrary to Grandparents' assertions, the guardianship drastically changed Mother's relationship with MEO and impacted her fundamental parental rights.

[¶ 53] The district court relied on several Wyoming decisions that predate significant parental rights cases such as *Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972), *Santosky v. Kramer,* 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982), and *Troxel v. Granville,* 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000). It is not surprising, then, that the decisional framework in those older cases is not cast in terms of a parent's fundamental rights. This Court did not condone removal of a child from a fit parent in any of the cases relied upon by the district court. Although we have sometimes described the child's best interests as having "constitutional preeminence," we have done so in light of an adjudication of neglect or abuse, elevating the child's interests above the individual claims of the parent. *E.g., In Interest of MKM,* 792 P.2d 1369, 1375 (Wyo. 1990) (minor was adjudicated a neglected child).

[¶ 54] The district court also suggested that the best interests standard was

appropriate because of pending voluntary guardianship proceedings that would be determined by the best interests standard pursuant to Wyo. Stat. Ann. § 3–2–105.[15] However, MEO's petition for appointment of her own guardian cannot, by itself, defeat her Mother's legal right to custody and control. *State ex rel. Klopotek*, 621 P.2d at 226–228.

[¶ 55] We must determine the standard for appointment pursuant to § 3–2–104 with an understanding of the nature of a guardianship of a minor and in a manner that does not offend rights protected by the constitutions of our state and nation. With due regard for these considerations, we conclude that, in the context of an involuntary guardianship proceeding where the proposed ward is a minor, a best interests inquiry is not triggered until the district court determines that the minor needs a guardian. A child with a parent has a natural guardian and is not in need of a court-appointed guardian, unless the court determines that the child's natural guardian is not fit. Thus, "[o]nce the natural parent is deemed fit, the issue of custody is decided." *Kay v. Rowland*, 285 S.C. 516, 331 S.E.2d 781, 782 (1985).

[¶ 56] In this case, the district court did not find that Mother was an unfit parent. At that point, Grandparents' petition should have been denied. In the absence of a finding of parental unfitness, the district court's finding that a guardianship was necessary for MEO was clearly erroneous. The district court erred by establishing the permanent plenary guardianship.[16]

## CONCLUSION

[¶ 57] Mother did not receive the statutorily and constitutionally required notice and opportunity to be heard before the temporary guardianship of MEO was established. Because it did not find Mother unfit as a parent, the district court's determination that a guardianship was necessary, based solely upon a best interests analysis, was clearly erroneous. The district court's order appointing Grandparents as MEO's guardians is reversed. We remand this matter to the district court for further proceedings consistent with this opinion and for the entry of any orders necessary and appropriate to effect the termination of the guardianship.

---

15. Wyo. Stat. Ann. § 3–2–105(a) provides:
 A guardian may be appointed by the court upon the petition of the proposed ward, including a minor who has reached the age of fourteen (14) years, if the court determines that the appointment is in the best interest of the petitioner.

16. In arriving at this conclusion, we are also mindful that the law provides other, and more extensive, protections for children. *E.g.* Wyoming's Child Protection Act, Wyo. Stat. Ann. § 14–3–201, *et seq.* Mother also argued on appeal that Grandparents should not have been allowed to use guardianship proceedings to circumvent the Child Protection Act, claiming that it provides the exclusive means to divest a parent of custody in favor of a non-parent. Other courts have considered similar arguments involving the proper role of probate courts and family or juvenile courts, with varying rationales and results. *E.g., Custody of Lori*, 444 Mass. 316, 827 N.E.2d 716, 721 (2005) ("emergency removal of children should be treated the same regardless of which court is issuing the order"); *In re Guardianship & Conservatorship for T. H.M.*, 640 N.W.2d 68, 72–73 (S.D.2002) (guardianship cannot be used to bypass abuse and neglect statutes); *Carr v. Prader*, 725 A.2d 291, 296 (R.I.1999) (probate courts may not award guardianship over objection of parent because they lack jurisdiction to divest parents of custody rights); *In re Guardianship of Lupe C.*, 112 N.M. 116, 812 P.2d 365, 371 (App.1991) (child neglect cannot be adjudicated in probate court because protections, rights, and services afforded to parents under state's child protection code are not guaranteed in guardianship proceedings). However, we need not reach this issue to afford Mother her desired relief, so "its resolution must wait another day." *Jordan v. Brackin*, 2003 WY 151, ¶ 12, 79 P.3d 536, 538 (Wyo.2003).